Johnnie PETERS *v.* William PIERCE

91-183                                         823 S.W.2d 820

Supreme Court of Arkansas
Opinion delivered January 21, 1992

*Gary Eubanks & Associates*, by: *James Gerard Schulze* and *William Gary Holt*, for appellant.

*Matthews, Sanders, Liles & Sayes*, by: *Marci Talbot Liles*, for appellee.

TOM GLAZE, Justice. Appellant brought suit against appellee alleging appellee's vehicle rear-ended appellant's pickup truck after the appellant stopped his truck at an intersection. Appellee responded, denying any liability. At trial, appellant offered proof that he had incurred $5,000 in medical bills and that his loss of wages was between $126,000 and $135,000. Appellee countered appellant's proof with a different version of how the rear-end collision occurred and medical testimony negating or diminishing the damages appellant claimed he had sustained. A jury awarded appellant a $6,000 verdict.

On appeal, appellant argues his low verdict resulted from two trial errors that created a false picture for the jury and deprived appellant of a fair trial. First, appellant claims the trial court should have allowed evidence of appellee's liability coverage to rebut appellee's unsolicited testimony reflecting his limited financial condition. Second, appellant contends the trial court erred in failing to declare a mistrial when appellant's employer mentioned worker's compensation when being cross-examined by appellee's counsel.

Appellant's first argument arises from testimony given by appellee in his defense and case-in-chief. Appellee's attorney asked some preliminary questions dealing with name, age and place of employment. Appellee answered each add, to the last question, replied that he was retired. His attorney then asked how long he had been retired, and he said, "Retired May 1st of 1988. And now, whatever I have, if it is taken away from me, I can't replace. I'm too old. I don't work anymore. I do occasionally part time, but not on a regular basis."

Immediately after appellee's remarks, appellant approached the bench, and outside of the jury's hearing, informed the trial court that he believed the appellee opened the door for appellant to show the appellee had $50,000 in liability insurance. Appellee countered by arguing that, if appellant received what he sought in damages, appellee would be financially devastated, notwithstanding his $50,000 in liability coverage. Before rejecting appellant's request, the following colloquy took place between the parties' respective counsel and the court:

THE COURT: My impression, just when I heard it, the response of the witness was not responsive to your question.

MR. SANDERS: [Defendant's attorney] Wasn't responsive to my question for sure.

THE COURT: I think it leaves an impression that this accident devastates him financially.

MR. SANDERS: It will if he gets what they want. That part is not untrue.

THE COURT: It might. But when it leaves the

impression he is out there by himself subject to that devastation. That's the problem I have with that.

MR. HOLT: [Plaintiff's attorney] Something else about that, Your Honor, I have repeatedly made policy limit settlement demands and said we would accept that. His client already told him if he doesn't pay that and he gets hit here he is going to sue him.

MR. SANDERS: That's totally outside the record here. I told you he didn't say that. In so many words he was going to go after the insurance company.

THE COURT: What are the limits on this?

MR. SANDERS: It is $50,000. The thing is, first, I don't know why he said that.

THE COURT: I don't think it was responsive.

\*     \*     \*

MR. HOLT: Your Honor, clearly there have been exceptions when the door is opened, and one of the major exceptions is when they get on there and testify about how catastrophic it is going to be to them.

MR. SANDERS: We don't go into them. He said whatever he loses he won't be able to replace.

MR. HOLT: No way to replace.

THE COURT: I think my impression of it was the jury was very attentive, as I have a peculiar view here, that he was talking about his life and being retired and how what little he had would be taken away from him.

MR. SANDERS: He couldn't replace.

THE COURT: That's why it disturbs me a bit. Could I get ya'll to do this? I know we are going back here at 12:20. If you could call and just get a cite.

\*     \*     \*

MR. SANDERS: I think what Gary is talking about, there's plenty of cases where somebody gets on the witness stand and you are quizzing them why they were

hurting so bad, why they didn't get medical treatment and so forth, "Well, I can't afford it." Then they say, "Well, the thing is, if they had insurance, that would have paid for all that treatment and cost was not a factor." They will let you get into that. He said anything he lost, and to that extent he is saying a true statement. It is not the same thing as saying he didn't go see a doctor, even though I was dying in pain because I couldn't afford it when there was somebody that would be paying the bill had he went. There's a big difference there.

THE COURT: I understand what you are saying there. I still think — I may be wrong. It may be that the law is entirely different, but from my prospective [sic], it seemed that had an impact on the jury.

After hearing the arguments of counsel, the trial court determined appellee's answer was unresponsive to his attorney's question. Rather than allowing the jury to know of appellee's liability insurance coverage, it instructed the jury that appellee's ability to satisfy a judgment should not be considered in arriving at a judgment.

■ Generally, it is improper in automobile accident cases for either party to introduce or elicit evidence of the other party's insurance coverage. *York* v. *Young*, 271 Ark. 266, 608 S.W.2d 20 (1980). The court has also said that the injection of insurance coverage is not proper unless it is relevant to some issue in the case. *Pickard* v. *Stewart*, 253 Ark. 1063, 491 S.W.2d 46 (1973). This court has allowed a plaintiff to be cross-examined about his insurance coverage after he gave misleading testimony regarding his financial inability to pay the full amount of damages his vehicle sustained as a result of the defendant's negligence. *York*, 271 Ark. 266, 608 S.W.2d 20 (1980). There York testified that, due to a shortage of personal funds, he was unable to fully repair his vehicle, when in fact insurance proceeds were available to him to cover the repairs. This court affirmed the trial court's ruling that York misled the jury, invited the rebutting questions and made the questions regarding his insurance relevant to the issues in the case. *Id.*, 271 Ark. at 267, 608 S.W.2d at 22.

■ The *York* decision is in keeping with the well-settled rule that where one party introduces incompetent testimony, he

cannot complain of the introduction of the same character of evidence directed to the same issue by the other party. *Arkansas State Highway Comm'n* v. *Pittman*, 251 Ark. 709, 473 S.W.2d 924 (1971). The *Pittman* court further held that the rebutting evidence restricted to "similar evidence," the "same subject," or to "answering evidence" in denial or explanation of the subject. In support of its holding, the court cited McCormick on Evidence which in relevant part reads as follows:

> · If the evidence, though inadmissible, is relevant to the issues and hence probably damaging to the adversary's case, or though irrelevant is prejudice-arousing to a material degree, and if the adversary has seasonably objected or moved to strike, then the adversary should be entitled to give answering evidence as of right. By objecting, he has done his best to save the court from mistake, but his remedy by assigning error to the ruling is not an adequate one. He needs a fair opportunity to win his case at the trial by refuting the damaging evidence . . . . [Footnotes omitted.]

Edward W. Cleary, *McCormick on Evidence* § 57, at 147-48 (3d ed. 1984).

In the present case, the trial court refused appellant the opportunity to answer appellee's misleading and incompetent testimony even though it believed appellee's remarks impacted adversely against the appellant. As mentioned above, appellee argued his remarks would not entirely be false, especially if appellant received an award substantially exceeding the $50,000 insurance amount. However, the trial court correctly noted that appellee's remarks left the false impression that appellee was "out there by himself" and therefore subject to financial devastation. Obviously, appellee's remarks were totally false assuming the jury awarded $50,000 or less, which it did. The adverse impact of appellee's remarks cannot be minimized by assuming, as appellee would have us do, that he merely told the jury "what he perceived to be the truth." Nor can we agree the trial court's cautionary instruction cured appellee's misleading statement or did anything more than draw special attention to appellee's personal ability (or inability) to satisfy a judgment in any amount.

■ As was the situation in *York*, appellee injected his limited personal resources into issues, casting doubt before the jury that he could afford or financially survive a judgment against him. By doing so, he portrayed a false, or at least a misleading picture, that he alone would absorb any loss or judgment, and under these limited and special circumstances, appellant had every right to answer appellee's portrayal by giving the jury the full and complete picture. The fact that appellee's remarks were volunteered and unsolicited by his own counsel cannot be used to justify the adverse or prejudicial impact they had upon the jury, and the trial court was wrong in so ruling.

Because the second evidentiary issue raised by appellant on appeal is unlikely to arise in the retrial of this matter, we need not reach it. For the reasons stated above, we reverse and remand this cause for a new trial.

CORBIN and BROWN, JJ., dissent.

DONALD L. CORBIN, Justice. The majority opinion takes the "opening the door" theory a step too far. Noticeably absent from the majority's reversal is any reference to the "abuse of discretion" standard that limits this court's review of a trial court's decision to exclude evidence. A.R.E. Rule 104(a); *Hubbard* v. *State*, 306 Ark. 153, 812 S.W.2d 107 (1991); *Marx* v. *State*, 291 Ark. 325, 724 S.W.2d 456 (1987); *White* v. *Mitchell*, 263 Ark. 787; 568 S.W.2d 216 (1978). While the majority cites cases in which this court has relied on the "opening the door" theory to affirm the admission of otherwise inadmissible evidence, none of those cases reversed a trial court's decision to exclude such evidence.

In this case, the trial court was in the best position to weigh both the prejudicial effect of the defendant's inappropriate remark and the potential prejudicial effect of admitting evidence concerning the monetary limit of the defendant's insurance policy. While the majority quotes extensively from the bench conference regarding the defendant's unsolicited remark, the ultimate decision to exclude the insurance evidence indicates the trial court's belief that the prejudicial effect of informing the jury that the defendant carried a $50,000 insurance policy would outweigh any prejudice caused by the defendant's remark.

The trial court's ruling is certainly consistent with this court's holding that evidence of insurance coverage is unnecessary and irrelevant in cases where its admission "is designed to skew the jury's thinking because of the presence or absence of a deep pocket." *Hacker* v. *Hall*, 296 Ark. 571, 576, 759 S.W.2d 32, 35 (1988). *York* v. *Young*, 271 Ark. 266, 608 S.W.2d 20 (1980), the case relied upon by the majority, is readily distinguishable from the present case. In that case, the plaintiff alleged that an accident caused by the defendant reduced the value of his truck by $3,000. He testified that the reason his repair bill was only $550 or $600 was because he could not afford to repair the remaining damage. We affirmed the trial court's decision to admit evidence of the plaintiff's collision insurance on the basis that such evidence served to refute the plaintiff's testimony that his truck had not been fully repaired.

I believe that the basis for admission in the *York* case distinguishes that case from the situation in the present case. In the *York* case, the insurance evidence served to refute the plaintiff's claim regarding the extent of damage to his vehicle. Because the insurance evidence in *York* was relevant to determining the actual damages sustained by the plaintiff, the admission served a legitimate rebuttal purpose.

In the instant case, no such legitimate purpose existed for admission of appellee's liability limits. Appellant does not allege that the evidence was relevant to either defendant appellee's negligence or to his sustained damages. Instead, appellant wished to use evidence of the defendant's insurance coverage to illustrate the defendant's ability to satisfy a judgment. Given this court's repeated admonitions regarding the dangers of introducing insurance evidence, I disagree with the majority's decision that the trial court abused its discretion in refusing to allow introduction of the defendant's liability coverage.

The trial court's ruling is also consistent with this court's reasoning in *Henson* v. *State*, 239 Ark. 727, 393 S.W.2d 856 (1965). In *Henson*, a rape case, the defendant presented inappropriate evidence concerning specific instances of his good conduct. The state responded by introducing witnesses who testified that the defendant had raped them. This court found error, stating: "[T]wo wrongs do not make a right. The evidence offered by

appellant was clearly inadmissible, but his did not justify the state in offering inadmissible evidence." *Id.* at 732, 393 S.W.2d at 859. Relying on the Second Circuit case *United States* v. *Beno*, 324 F.2d 582 (2d Cir. 1963), the court quoted as follows:

> For it makes little sense to insist that once incompetent evidence is erroneously admitted, the error must of necessity be compounded by "opening the door" so wide that rebutting . . . collateral, inflammatory and highly prejudicial evidence may enter the minds of the jurors. In short, a small advantage improperly obtained does not compel the exaction of a gross disadvantage in penalty, particularly where a tarnished verdict is the inevitable result.

*Id.* at 588-89.

It has been suggested that the principle behind the "opening the door" theory is to provide a device by which a trial error can be cured at the trial itself. 1 *Wigmore on Evidence* § 15, n. 2, p. 732 (Tillers rev. 1983). If this is so, I believe the discretion of the trial court must provide the linchpin behind the theory. I dissent because I disagree with the majority's disregard for the trial court's discretion.

BROWN, J., joins in this dissent.