MINERVA ENTERPRISES, INC. *v.* Jean HOWLETT
and Leona Carter

91-261 824 S.W.2d 377

Supreme Court of Arkansas
Opinion delivered February 10, 1992

294

*John I. Purtle*, for appellant.

*Ludwig Law Firm*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Minerva Enterprises, Incorporated, ("Minerva"), appeals a judgment of the Pulaski County Circuit Court awarding separate appellees Jean Howlett and Leona Carter property damages for negligence associated with a septic tank system in its mobile home park. For reversal, Minerva contends there was insufficient evidence of liability as well as insufficient proof of damages. We find no error in the circuit court's judgment and affirm.

Appellee Jean Howlett lived in a mobile home located in Pulaski County. Separate appellee Leona Carter, Howlett's mother, signed an installment sales contract for the purchase of the mobile home because Howlett was unable to obtain credit for the purchase. At all times after the purchase, however, Howlett possessed the mobile home and made the payments on it. Howlett also executed a rental agreement for a lot in Landmark Mobile Home Court, which is owned and operated by Minerva. Approximately one year after her mobile home was installed at Landmark Court, Howlett returned to her mobile home after a week's absence to find it flooded with solid and liquid sewage. Howlett made unsuccessful attempts to sell the mobile home and its contents. She then allowed the mobile home to be repossessed.

Howlett filed suit against Minerva alleging damages to the mobile home and its contents caused by Minerva's negligent maintenance and operation of its septic tanks. Minerva answered

denying its negligence and claiming the negligence of Howlett or someone other than itself. The case was tried to a jury which awarded Carter $10,750.00 for damage to the mobile home. The jury also awarded Howlett $2,425.00 for damage to her personal property inside the mobile home. The trial court entered a judgment consistent with the jury's verdict. Minerva moved for judgment notwithstanding the verdict, or alternatively for a new trial, based on insufficient evidence of liability and insufficient proof of damages. The trial court denied Minerva's motion, but exercised its inherent power of remittitur and reduced Carter's judgment to $8,500.00. Howlett's judgment remained unchanged. It is from this order that Minerva appeals.

Minerva makes three assignments of error. First, Minerva asserts there is insufficient evidence to support the trial court's judgment of negligence. Minerva contends all the evidence is consistent with its theory that Howlett is responsible for the damage to her mobile home. The rental agreement between Minerva and Howlett provided that Minerva was responsible for maintaining the septic tank and lines to the point where Howlett's mobile home connected to the lines and that Howlett was responsible for maintaining the lines from her mobile home to the point of connection. Minerva argues the evidence suggests the septic lines were upward-sloping from Howlett's mobile home to the point of connection, thereby causing a stoppage problem. Minerva also argues that Howlett had a problem with her water and that her toilet was disfunctioning so that water was constantly draining into the septic tank, possibly causing sewage to overflow into her mobile home.

When reviewing a trial court's refusal to set aside a jury verdict on liability, we view the evidence in the light most favorable to the appellee and affirm if there is substantial evidence to support the verdict. *Harper* v. *Clark Equip. Co.*, 300 Ark. 413, 779 S.W.2d 175 (1989). Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other with reasonable and material certainty; it must force the mind to pass beyond suspicion or conjecture. *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 817 S.W.2d 873 (1991); *Williams* v. *O'Neal Ford, Inc.*, 282 Ark. 362, 668 S.W.2d 545 (1984).

The evidence, as viewed most favorably to Howlett and Carter, is that after discovering the sewage in her mobile home, Howlett notified Frank Jones and John McCaleb, Minerva's officers and owners, and waited at her mobile home for them to inspect the problem. Howlett waited for thirty to forty-five minutes and neither Jones nor McCaleb came to her mobile home. Howlett then telephoned Dale Crawford, who has been in the plumbing business for fifteen years, and he agreed to inspect her mobile home at 7:00 a.m. the next morning.

Mr. Crawford arrived at appellant's mobile home as he said he would and found the carpet soaked with toilet paper and sewage waste. Mr. Crawford testified that it looked like the sewage had risen about a foot in the mobile home. He saw sewage backed up in the bathtub, toilet and sink drains. Mr. Crawford testified that in his opinion, there was improper maintenance in the septic system itself; the septic tank was either full or had a stoppage in the line somewhere. He stated that if there was a stoppage in the line, the remainder of the plumbing in the mobile home would create pressure, forcing liquids, fecal matter, and toilet paper to back up through the mobile home owner's line. He also stated that Howlett's mobile home was on the downhill side of the septic tank and that if the tank were full or stopped up it would be Howlett's mobile home that would flood first. Mr. Crawford stated he regularly worked on plumbing problems in mobile homes and had never seen this much damage from a sewer or septic tank to a mobile home before.

Although Minerva presented evidence that is contrary to the foregoing evidence, we are reminded that it is within the province of the jury to resolve the conflicting evidence, *Union Lincoln Mercury* v. *Daniel*, 287 Ark. 205, 697 S.W.2d 888 (1985). We conclude the foregoing evidence is substantial and therefore sufficient to support the conclusion and judgment of the trial court. For as we have stated many times before, the question is not whether the evidence would have supported some other conclusion, but whether it supports the conclusion reached by the trier of fact. *Lewis* v. *Crowe*, 296 Ark. 175, 752 S.W.2d 280 (1988); *Arkansas W. Gas Co.* v. *Arkansas Pub. Serv. Comm'n*, 266 Ark. 668, 588 S.W.2d 424 (1979).

Minerva's second assignment of error relates to the assess-

ment of damages. Minerva claims that the correct measure of damages for damage to personal property is the difference in the fair market value of the property immediately before and immediately after the injury. As authority for this measure of damages, Minerva cites AMI 2226 and *Daughhetee* v. *Shipley*, 282 Ark. 596, 669 S.W.2d 886 (1984). Minerva claims neither Howlett nor Clark has met their respective burdens of producing evidence of the value of their property immediately before and immediately after the incident causing the damage.

 We begin addressing Minerva's second point by reviewing the rules for measuring and proving damages to property. When there has been a total loss of property as when there is no salvage value or no possibility of repair, the owner is entitled to recover the fair market value of the property immediately before the loss occurred. *Kanis* v. *Rogers*, 119 Ark. 120, 177 S.W. 413 (1915). However, when the property is not a total loss but is only damaged, the owner is entitled to recover the difference in the fair market value of the property immediately before and immediately after the damage occurred. *Daughhetee*, *supra*. In both situations, the fair market value is defined as the price the personalty would bring between a willing seller and a willing buyer in the open market after negotiations. *Southern Bus Co.* v. *Simpson*, 214 Ark. 323, 215 S.W.2d 699 (1948). When the personalty that has been damaged is clothing, home appliances, or other personal items, the measure of damages is not the fair market value but simply the fair value. *Howard's Laundry & Cleaners* v. *Brown*, 266 Ark. 460, 585 S.W.2d 944 (1979); *Cecil* v. *Headley*, 237 Ark. 400, 373 S.W.2d 136 (1963). Fair value is determined not by considering the saleable or second-hand value, but by considering the reasonable value to the owner for his own use, which includes considerations of original cost, replacement cost, and the owner's past and future use of the items. *Howard's Laundry*, *supra*.

 When alternative methods of measuring damages are available, the court must determine the appropriate measure and instruct the jury accordingly. *Lewis* v. *Phillips*, 223 Ark. 380, 266 S.W.2d 68 (1954); *Willis* v. *Triplett*, 10 Ark. App. 247, 663 S.W.2d 201 (1984). Here, the jury was instructed that the appropriate measure of damages is the difference in fair market value immediately before and immediately after the damage

occurred. Neither party disputes that this is the correct measure of damages for this case. Instead, Minerva claims Howlett and Carter have not met their respective burdens of proving value before and after the accident.

■■■■ The burden of proving damages rests on the party claiming them and the proof must consist of facts, not speculation. *Christmas v. Raley*, 260 Ark. 150, 539 S.W.2d 405 (1976). In a variety of factual situations, we have consistently allowed the property owner to give his or her opinion of the value of the damaged property. *Walt Bennett Ford, Inc. v. Brown*, 283 Ark. 1, 670 S.W.2d 441 (1984); *L.L. Cole & Son, Inc. v. Hickman*, 282 Ark. 6, 665 S.W.2d 278 (1984); *Boston Ins. Co. v. Farmer*, 234 Ark. 1007, 356 S.W.2d 434 (1962). Additionally, when proving damages for property that was not a total loss, the difference in fair market value may be established by the reasonable cost of repairing the damaged property. *Sipes v. Munro*, 287 Ark. 244, 697 S.W.2d 905 (1985); *Slaughter v. Barrett*, 239 Ark. 957, 395 S.W.2d 552 (1965).

We discuss the evidence as it relates to the values of the mobile home and its contents separately. With respect to the value of the mobile home, Howlett testified that she gave approximately $12,000.00 for it. The installment sales contract for the purchase of the mobile home listed a total purchase price of $19,459.72, including a down payment of $4,405.00 and a balance of $8,810.00 financed at 14.75% for a finance charge of $6,244.72. Howlett testified the mobile home was in the same condition at the time of the accident that it was at the time it was purchased. Howlett also testified that she ran an advertisement in the newspaper offering to sell the mobile home and its contents. She also contacted a representative from A-1 Mobile Homes, the company from which the mobile home was purchased, regarding the repurchase of the mobile home. Howlett stated she did not receive any offers to purchase the mobile home or its contents. Minerva's witness, Louis Nalley, Sr., described himself as a dealer of manufactured homes for forty-one years who also had occasion to do repair work on mobile homes. Mr. Nalley testified that the current value of a Champion Woodlake 14 x 66 mobile home, the same model as Howlett's, was $8,500.00. After viewing photographs of Howlett's mobile home, Mr. Nalley stated that the carpet and floors could be repaired or replaced for $1,200.00.

With respect to Howlett's personal effects inside the mobile home, she testified she made a list of this property two or three days after the accident. She valued some of the items on the list according to replacement cost; however, the items she purchased most recently were valued according to purchase price. Howlett testified these items were worthless to her after the accident because of their bacterial contamination. Again, we note that she advertised the items for sale along with the mobile home, but received no offers to buy anything.

The thrust of Minerva's argument is that neither Carter nor Howlett has met their respective burdens of proving damages to the mobile home and its contents as there is no proof of value. Minerva also argues it was error for the trial judge to allow Howlett to testify as to the value of the mobile home because she was not the owner of it, her mother was. Alternatively, Minerva argues Howlett's testimony as to value of the mobile home should not have been admitted because it did not have a rational basis. Howlett responds that she is the *de facto* owner of the mobile home and thus should be allowed to testify as to its value.

We find no merit in Minerva's argument. First, we conclude the trial court did not abuse its discretion in allowing Howlett to testify to the value of the mobile home. It is true that she is not the legal owner of the property, however, she is the equitable owner. She shopped for the mobile home, made the payments on it, rented a lot for it and arranged for its installation. Howlett had exclusive possession of the mobile home. She had personal knowledge of the mobile home and its condition both before and after the accident. Thus, she was competent to testify as to its value either as the equitable owner in possession of the property or as a lay witness. She gave a rational basis for her valuation testimony. Second, we conclude she presented sufficient proof of the damages to her mobile home. She testified the before-injury value was $12,000.00. She stated the mobile home had no salvage value as she was unable to sell it after the accident. Thus, the after-injury value was $0.00.

We reach the same conclusion with respect to the contents of the mobile home. There is no question that Howlett was the owner and could testify to the value of the contents. *Walt Bennett Ford, supra.* The before-injury value she stated on the

itemized list was $5,124.00. Her statements that the items were worthless to her because of the bacteria along with her unsuccessful attempts to sell the items established the after-injury value at $0.00. She also testified the party who repossessed her mobile home charged her $2,000.00 for the removal and repossession fee.

Accordingly, we hold Howlett and Carter presented sufficient proof of damages to their respective properties. It was not error for the trial court to deny the request to set aside the verdict or grant a new trial.

Minerva's third assignment of error is that Howlett failed to mitigate her damages as required by law. It is a defendant's burden to prove matters relating to mitigation. As a defendant, Minerva must show both that Howlett could have taken actions to mitigate her damages and the amount of damages that might have been avoided by her proper mitigation. *Western Grove Sch. Dist.* v. *Strain*, 288 Ark. 507, 707 S.W.2d 306 (1986); *Bill C. Harris Constr. Co.* v. *Powers*, 262 Ark. 96, 554 S.W.2d 332 (1977). This Minerva has failed to do. Minerva merely asserts that Howlett should have salvaged her personal belongings and cleaned and sterilized them; it offers no evidence that she could have salvaged or sterilized the belongings at a reasonable or unreasonable expense nor does it assert a dollar amount that could have been avoided had any of the belongings been salvaged. Therefore, we conclude Minerva has not met its burden of proving Howlett's failure to mitigate and the dollar value of damages caused by such failure.

Affirmed.