Tom YOUNTS d/b/a Getta Tan *v.* BALDOR ELECTRIC
COMPANY, Inc., Spirit Manufacturing Company, Inc.

92-207                                    832 S.W.2d 832

Supreme Court of Arkansas
Opinion delivered June 29, 1992

*Friday, Eldredge & Clark*, by: *James C. Baker, Jr.*, and *T. Wesley Holmes*, for appellant.

*Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.*, by: *Jacob Sharp, Jr.*, and *Brian Allen Brown*, for appellees.

DAVID NEWBERN, Justice. This is a products liability case in which the jury returned a $2000 verdict in favor of Tom Younts, the appellant, against Baldor Electric Company (Baldor) and Spirit Manufacturing Company (Spirit), the appellees. Younts argues the Trial Court erred in (1) holding he opened the door for the introduction of evidence of insurance which would be otherwise barred by the collateral source rule, and (2) failing to grant a new trial based on the inadequacy of the damages awarded. We find no abuse of discretion and affirm.

Younts operated a tanning salon and exercise facility known as "Getta Tan" which was located in a renovated mobile home. A fire destroyed the mobile home and its contents. A defective motor in an exercise machine allegedly caused the fire. The motor was manufactured by Baldor and distributed by Spirit.

Younts sued Baldor and Spirit, asserting theories of negligence, strict liability, and breach of express and implied warranty. Younts testified the fair market value of the trailer prior to

the fire was approximately $14,000, and the value of the contents in the trailer was estimated to be $29,813.74. He spent $1500 to remove debris from the site and $175 to have trees repaired. He also stated he lost approximately $370 a month in profits, resulting in a total profits loss of $14,430. The total damages amount from the fire was estimated to be $59,918.74. This testimony was undisputed.

During direct examination, counsel asked Younts whether the had been able to reopen his business after the fire. Younts stated, "Haven't been able to afford it." Defense counsel argued during an *in camera* hearing that this testimony opened the door for him to show Younts had received an insurance settlement. In response, Younts' counsel stated he would proffer evidence that his client was underinsured and honestly could not afford to reopen the business. At the *in camera* hearing, counsel did not present any proof that Younts was telling the truth when testifying he could not afford to reopen.

The Trial Court ruled Younts' testimony opened the door for defense counsel to question Younts about the $41,500 insurance settlement he had received. The Court reasoned the insurance settlement would show that Younts was substantially made whole and would contradict his testimony that he could not afford to reopen his business. Only after the Trial court determined the evidence admissible, and upon resumption of the trial before the jury, did Younts explain that even with the insurance proceeds he could not afford to reopen because he owed money on the fire-damaged machinery and could not afford to purchase new machinery on credit.

The jury returned a verdict in Younts' favor of $2000. The verdict form indicates the jury originally awarded $3923.74, but that amount was crossed out. The crossed out amount is approximately the difference between the amount of property damages allegedly sustained and the amount of the insurance settlement, Younts' motion for new trial was denied.

### 1. Evidence of insurance

■■ We will not reverse a trial court's ruling on the admission of evidence absent abuse of discretion. *See, e.g.,* *Hubbard* v. *State*, 306 Ark. 153, 812 S.W.2d 107 (1991); *White*

v. *Mitchell*, 263 Ark. 787, 568 S.W.2d 216 (1978). As a general rule, it is improper for either party to introduce or elicit evidence of the other party's insurance coverage. *York* v. *Young*, 271 Ark. 266, 608 S.W.2d 20 (1980). This principle is part of the collateral source rule which excludes evidence of benefits received by a plaintiff from a source collateral to the defendant. *Patton* v. *Williams*, 284 Ark. 187, 680 S.W.2d 707 (1984).

■ When a party testifies about his or her financial condition in a false or misleading manner, however, he or she opens the door for the introduction of evidence which might otherwise be inadmissible under the collateral source rule. *See, e.g., Peters* v. *Pierce*, 308 Ark. 60, 823 S.W.2d 820 (1992); *York* v. *Young, supra.*

It is important to recognize that Younts' testimony came when he was being questioned by his own counsel. The question asked was whether he had rebuilt the physical facilities of his business. The question was wholly irrelevant to any question in the case other than possibly that of mitigation of damages which does not appear to have been at issue. The dissenting opinion seems to conclude as a matter of fact that Younts was telling the truth or that he answered in good faith. We have no way to determine that. Appellate courts do not make those decisions. The important point is that Younts' response that he could not afford to rebuild could very well have been misleading to the jury. In *Peters* v. *Pierce, supra*, and in *York* v. *Young, supra*, we held that in such a situation the collateral source rule does not prevent introduction of evidence of insurance.

■ At the hearing on the admissibility of the insurance settlement, Younts' counsel did not proffer Younts' testimony or any other evidence to the Trial Court which might indicate that Younts was telling the truth when testifying he could not afford to reopen his business. Thus, when the evidentiary decision was made, the Trial Court did not have the benefit of evidence in support of Younts' statement. Counsel only stated Younts was underinsured. Even if further testimony had been proffered, we cannot say it would have been improper for the Judge to let the jury decide the issue with all pertinent evidence before it. We certainly cannot hold that the Trial Court abused its discretion in these circumstances.

## 2. Inadequacy of damages

Younts next contends the Trial Court abused its discretion by not granting a motion for new trial because undisputed testimony showed the damages to be inadequate.

Error in the assessment of the amount of recovery, whether too large or too small, is a ground for new trial even in the absence of other trial error. Ark. R. Civ. P. 59(a)(5); *Gilbert* v. *Diversified Graphics*, 286 Ark. 261, 691 S.W.2d 162 (1985). When the primary issue is the alleged inadequacy of the award, we sustain the trial judge's denial of a new trial unless there is a clear and manifest abuse of discretion. *Fields* v. *Stovall*, 297 Ark. 402, 762 S.W.2d 783 (1989). In reviewing this discretion, an important consideration is whether a fair minded jury might reasonably have fixed the award at the challenged amount, here $2000. *Warner* v. *Liebhaber*, 281 Ark. 118, 661 S.W.2d 399 (1983).

Although we have no way of knowing for certain, it is apparent that the jury may well have reduced Younts' recovery by the amount he recovered from a collateral source, that is, an insurance policy which belonged to him. That is very troublesome to us as we agree with Younts that he had a "substantive right" not to have his recovery so reduced if indeed he recovered from insurance for which he had paid. *East Texas Motor Freight Lines, Inc.* v. *Freeman*, 289 Ark. 539, 713 S.W.2d 456 (1986). While Baldor and Spirit do not make the argument, we should mention that nothing in the record before us indicates that Younts requested an instruction to the jury on the collateral source rule.

Other jurisdictions have model instructions to inform the jury of its duty when there is evidence of a collateral source recovery. *See, e.g., Wallace* v. *May*, 822 S.W.2d 471 (Mo. App. 1991); *Calloway* v. *Dania Jai Alai Palace, Inc.*, 560 So.2d 808 (Fla. App. 4 Dist. 1990). Sample or model instructions on the point appear in G. Douthwaite, Jury Instructions on Damages in Tort Actions, §§ 1-17 and 1-18, pp. 40-45 (2d ed. 1988). While we have no such instruction in the Arkansas Model Jury Instructions, Civil, that would not have precluded instructing the jury on the collateral source doctrine, if it had been appropriate to do so, once the evidence of insurance recovery was admitted.

■ While it is true that Baldor and Spirit offered no evidence disputing Younts' testimony about the extent of his loss and his explanation of his statement that he could not afford to rebuild despite the insurance settlement, we have consistently stated an interested party's testimony is disputed as a matter of law. *Gilbert* v. *Diversified Graphics*, *supra*; *Fields* v. *Stovall*, *supra*. Again, it is for the jury to judge the credibility of witnesses. The jury may not have believed one word of Younts' testimony about being underinsured and indebted on his equipment. We can hardly find a clear and manifest abuse of discretion in the Trial Court's denial of Younts' motion for a new trial.

Affirmed.

BROWN, J., dissents.

GLAZE, J., not participating.

ROBERT L. BROWN, Justice, dissenting. I would reverse the circuit court's decision which allowed evidence of Younts's fire insurance in this case.

The question and answer giving rise to this issue occurred during Younts's direct examination:

> Q. And have you been able to reopen the business since the August '88 fire?

> A. Haven't been able to afford it.

No further comment was made by Younts, and no objection was raised by Baldor Electric at this point. Following direct examination, counsel for Baldor Electric asked for a hearing in chambers, where he argued that Younts, by his answer, had opened the door to interrogation about the insurance proceeds which he received as a result of the fire.

Younts's counsel rejoined strongly by invoking the collateral source rule and the fact that Younts was underinsured. He then added:

> . . . that this gentleman was underinsured, I'll proffer for the record, and that he was giving an honest answer when he said that it was not affordable for him to reopen his business; that he's not mislead (sic) the jury in any way by giving that response; that it is hugely prejudicial to my

client to mention insurance in that Mr. Sharp's client can still cross examine Mr. Younts on the feasibility of opening or reopening that business; that the prejudice so far outweighs the probative value of mentioning the insurance.

The circuit court ruled immediately that the insurance issue had been opened by Younts's statement and added that Younts had been made substantially whole by the insurance proceeds, though he had not yet heard his testimony on this point. No testimony was taken in chambers.

Back in open court, Baldor Electric, on cross examination, pursued the amount of fire insurance paid Younts, which was said to be $41,500:

Q: So actually you made the business judgment not to go back into the Getta Tan business, did you not?

A: A business judgment?

Q: Yes.

A: I could not afford to go back in it.

Q: I see. With the forty-one thousand dollars you couldn't afford to go back into business?

A: Sir, I didn't have the forty-one thousand. I owed on the machinery.

Q: Well, if you bought them on credit before you couldn't buy them on credit again?

A: Not with the amount of the other stuff that I lost in the trailer, no, sir, I couldn't.

The jury then awarded Younts $2,000 on a $45,423.74 claim. It first had written on the verdict form that the award should be $3,923.74, which is the difference between the $41,500 insurance proceeds and $45,423.74, but it crossed this amount out in favor of $2,000. That the jury bottomed its award in part on the insurance proceeds received is patently obvious.

This is not a case where a plaintiff intentionally misled the jury or where rebuttal testimony is necessary to refute erroneous information. *See, e.g., Pursley* v. *Price,* 283 Ark. 33, 670 S.W.2d 448 (1984). It is a situation where Younts believed what he was

saying and could back it up with facts.

The majority, however, artfully dodges the crucial issue and predicates its decision on the failure of Younts to put on live testimony in chambers. This conclusion is reached even though the circuit court had the benefit of counsel's argument that Younts was being truthful. The court chose instead to rule quickly after arguments by counsel. By doing so, the court interpreted Younts's comment about non-affordability as deliberately misleading and imbued Younts's answer with a motive of connivance when there was no factual basis for doing so.

What is really at issue here is the future of the collateral source rule. Simply put, the rule states that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. 22 Am. Jur.2d, *Damages* § 566, p. 638, *et seq*. We have endorsed the rule in Arkansas. *See Patton* v. *Williams*, 284 Ark. 187, 680 S.W.2d 707 (1984). By opening the door to insurance testimony on the flimsiest of pretexts, the majority erodes the rule until it is all but nonfunctional.

Opponents of the collateral source rule argue that it creates a windfall or, at least, the potential for double recovery. That argument, though, is refuted best by Jacob A. Stein in his distinguished treatise on personal injury damages:

> As applied to insurance benefits, the collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. Furthermore, the collateral source rule partially serves to compensate for the large portion of the plaintiff's recovery that ordinarily must be paid to his other attorney under a contingent fee contract, which is an expense of the plaintiff not generally brought to the attention of the jury. Finally, in many insurance cases the rule produces no double recovery because insurance policies increasingly provide for either subrogation or refund of benefits upon a tort recovery.

*Stein on Personal Injury Damages*, "Collateral Source Doctrine," § 10:2, p. 416 (2d Ed. 1991).

More was needed than Younts's truthful comment to justify

the overwhelming prejudice that resulted from the insurance testimony in this case. The case should be reversed and remanded for a new trial.