Kathy ESRY *v.* James CARDEN

96–406                                    942 S.W.2d 846

Supreme Court of Arkansas
Opinion delivered April 21, 1997

*Mitchell, Blackstock and Barnes,* by: *Jack Wagoner III,* for appellant.

*Matthews, Sanders, & Sayes,* by: *Margaret M. Newton* and *Mel Sayes,* for appellees.

W.H."DUB" ARNOLD, Chief Justice. This is a personal-injury case where Kathy Esry, the appellant, brought suit against James Carden, the appellee, to recover for injuries allegedly sustained in an automobile accident. At trial, appellant testified that she had incurred damages for medical bills, lost wages and mileage expenses totalling over $8400; appellee challenged these damages. Appellee testified that the accident was minor and that neither he nor his passenger was injured; additionally, he testified that the accident was his fault. The jury returned a general verdict in favor of appellee despite his testimony that he was responsible for the accident.

On appeal, appellant argues that the verdict for the appellee resulted from trial court errors which created a false picture for the jury, thus depriving appellant of a fair trial. Specifically, appellant claims that (1) the jury's verdict was against the preponderance of the evidence; (2) the trial court erred in denying the appellant's motion for a new trial; and (3) the trial court erred in suppressing evidence related to the appellee's insurance coverage to rebut his testimony that he did not work because of disabilities. We conclude that there was substantial evidence to support the jury's finding and that the trial court did not abuse its discretion in the exclusion of evidence related to insurance coverage; therefore, we affirm.

## I. Sufficiency of Evidence to Support the Jury's Verdict

■ Appellant's first and second arguments regard the sufficiency of the jury's verdict and the trial court's denial of the motion for a new trial. Rule 59(a) of the Ark. Rules of Civil Procedure allows a motion for a new trial to be granted upon a showing of one of eight reasons. One permissible reason is that "the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to law." Ark. R. Civ. P. 59(a)(6). In *Hall v. Grimmett,* 318 Ark. 309, 885 S.W.2d 297 (1994), we stated that the test on appeal for a denial of a motion for a new trial is "whether there is substantial evidence to support the jury verdict."

*Id.* at 310, *citing Minerva Enter. Inc. v. Howlett*, 308 Ark. 291, 824 S.W.2d 377 (1992). Substantial evidence is defined as "evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture." *Id.* In examining whether substantial evidence exists, all evidence must be examined "in the light most favorable to the party on whose behalf the judgment was entered and [given] its highest probative value, taking into account all reasonable inferences deducible from it." *Id., citing Gipson v. Garrison*, 308 Ark. 344, 824 S.W.2d 829 (1992). In such situations, the "weight and value [of testimony] is a matter within the exclusive province of the jury." *Id., citing Rathburn v. Ward*, 315 Ark. 264, 866 S.W.2d 403 (1993).

In instances where the verdict is against the party which has the burden of proof and that party appeals the denial of a motion for a new trial, the test above is not applied strictly. In *Hall*, we held that, in such instances, "a literal application of the rule would be untenable, as the defendant may have introduced little or no proof" yet been granted the verdict. *Id.* at 312.

This case provides a similar factual scenario to a case we recently decided, *Bell v. Darwin*, 327 Ark. 298, 937 S.W.2d 665 (1997). In *Bell*, the appellee was involved in an automobile accident, and in his deposition, admitted fault for a portion of the accident. Despite the testimony, the jury returned a general verdict for the appellee. The appellant moved for a new trial which was denied; an appeal followed. We determined that although the appellee had admitted fault, there was substantial evidence for the jury to determine conversely that he was not at fault. Accordingly, a jury is in the best position to determine the weight to be given testimony. *Id.* at 301-02.

In *Primm v. U.S. Fidelity & Guaranty Ins. Corp.*, 324 Ark. 409, 922 S.W.2d 319 (1996), we determined that when a jury returns a general verdict, such a verdict could be based upon a finding of no liability, no damages, or both; we will not speculate on the basis of a jury's verdict. When special interrogatories concerning liability or damages are not requested, we are left in the position of not knowing the basis for the jury's verdict, and we

will not question nor theorize about the jury's findings. *See,* *Barnes, Quinn, Flake & Anderson v. Rankins,* 312 Ark. 240, 848 S.W.2d 924 (1993). *See also, Smith v. Babin,* 317 Ark. 1, 875 S.W.2d 500 (1994); *Harding v. Smith,* 312 Ark. 537, 851 S.W.2d 427 (1993); and *Mikel v. Hubbard,* 317 Ark. 125, 876 S.W.2d 558 (1994).

Appellant's testimony revealed several areas in which the jury could possibly have questioned her credibility and the legitimacy of her injuries. Immediately following the accident, she stated that she was not injured, refused medical treatment, and drove her automobile home. She sought medical attention the day following the accident complaining of an injury to her neck; the report from this doctors' examination indicated that her physical condition was normal and her x-rays showed no injuries. Approximately two weeks later, she scheduled an appointment with a neurosurgeon; she was administered an MRI, the results of which were normal. On cross examination, appellee's counsel questioned whether she had hired an attorney prior to this doctors' appointment. She testified that she had not; however, the medical report of this doctor indicated that a copy of the report was forwarded to appellant's counsel. Several months later, she scheduled an appointment with an orthopedic surgeon who suggested conducting an MRI one year later to follow-up on the pain she reported. The second MRI showed a bulging disk which the doctor, in a video deposition, classified as a minimal injury that he could only assume was caused by the accident because he did not know of any other injuries sustained by the appellant.

Appellant's testimony regarding the amount of her damages was challenged by appellee. On cross-examination, appellant admitted that she was seeking compensation for mileage to and from doctors appointments which were in the same building where she worked and which were scheduled on days she was already at work. Another important fact to note is that the only medical evidence submitted by appellant were written doctors' records and a video deposition of the orthopedic surgeon in which he testified that he assumed the accident caused appellant's injuries because he knew of no other occasion in which appellant had been hurt.

Appellee testified that he was disabled, and although he had previously fractured his skull, broken his backbone and neck, he barely felt the impact of the accident and was not injured. He testified that his passenger sustained no injuries in the accident. He also testified that he "supposedly hit [the appellant] because [he] hit behind the front door" and that he assumed the accident was automatically his fault because he was in the appellant's lane of traffic.

■ It is our determination that there was substantial evidence to support the jury's verdict. It is feasible that the jury could have determined, without speculation, that although the wreck was the fault of the defendant, appellant's injuries were not a result of the wreck. Additionally, it is conceivable that the jury could have determined that the defendant was not at fault although he testified that he was. Taking into consideration all of the evidence submitted and the fact that the jury returned a general verdict for the defendant, it is impossible to know exactly how the jury balanced the evidence submitted; therefore it is not within our domain to question the jury's general verdict.

## II.   Evidentiary Issues

Appellant's principle argument arises from testimony given by appellee in his defense in which he stated that he was disabled and not working. Immediately after appellee's remarks, appellant approached the bench and, outside the jury's presence, claimed that the remarks opened the door for evidence regarding the existence of appellee's liability insurance policy. The testimony in question follows:

| | |
|---|---|
| Mr. Sayes: | [Defendant's Attorney] Now what do you do for a living? |
| Defendant: | I'm disabled. |
| Mr. Sayes: | Do you have some physical problems of some sort? |
| Defendant: | Yeah, I broke my back and neck. |
| Mr. Sayes: | You broke your back and neck? |

Defendant: Yes, sir, fractured my skull and several other things.

Mr. Sayes: So you do not work I take it?

Defendant: No, sir.

[BENCH CONFERENCE]

Mr. Sayes: Mr. Carden, this is my last question. As a result of this incident, were you injured in any way?

Defendant: Well, I already had prior injuries and I have a doctor that I go see every month.

Mr. Sayes: Were you any worse as a result of this than what you were before?

Defendant: I didn't hardly feel it. It was just a ricochet off the front of my truck.

Mr. Sayes: Did you drive away?

Defendant: Yes, sir. I drove the truck for three months.

Mr. Sayes: Was your passenger injured?

Defendant: No, sir.

Appellant argues that this testimony "opened the door" to allow the introduction of appellee's liability insurance policy because testimony relating to appellee's unemployment could mislead the jury to assume that appellee did not have the financial means to endure a judgment. Appellant claims that such evidence is necessary to rebut the presumption of the appellee's meager financial status. Appellee argues that this particular questioning does not create such a presumption nor is it misleading. Appellee further argues that the sole reason for this testimony was to illustrate that the disabled appellee was not injured as contrasted with the appellant who claimed extensive injuries. At the bench conference, the trial court ruled that the door had not been opened for the introduction of insurance evidence and thus excluded evidence related to appellee's insurance policy.

A trial court's ruling on the admission or exclusion of evidence will not be reversed absent abuse of discretion. *See*, Ark. R. Evid. 104(a); *Hubbard v. State*, 306 Ark. 153, 812 S.W.2d 107

(1991). As a general rule, it is improper for either party to introduce or elicit evidence of the other party's insurance coverage. *Pickard v. Stewart*, 253 Ark. 1063, 491 S.W.2d 46 (1973); *York v. Young*, 271 Ark. 266, 608 S.W.2d 20 (1980). However, a party opens the door for the introduction of evidence which might otherwise be inadmissible under the collateral-source rule when that person testifies about his or her financial condition in a false or misleading manner. *Younts v. Baldor Electric Co.*, 310 Ark. 86, 832 S.W.2d 832 (1992); *Peters v. Pierce*, 308 Ark. 60, 823 S.W.2d 820 (1992).

In *Peters v. Pierce*, the appellant claimed that the trial court erred in excluding evidence of the existence of appellee's insurance coverage after the appellee had testified about his financial condition and how a judgment would devastate him financially. This court reversed the trial court's ruling and remanded the proceeding for a new trial.

The testimony in *Peters* was an unresponsive remark by the defendant in which he stated that he would be financially devastated in the event of an adverse judgment against him. In a bench conference, the trial court concluded that the defendant's testimony "seemed [to have] an impact on the jury." *Id.* at 63. Despite this determination, the trial court excluded evidence regarding the appellee's insurance coverage. We determined that such testimony could have left the jury with the unfair impression that the appellee would have to bear the financial burden of a judgment alone and that the plaintiff should have had an opportunity to refute such misleading testimony. In such a situation, there was an abuse of discretion by the trial court.

In the case before us, the trial court made no determination that the jury had been misled by the testimony in question. In fact, at the bench conference, the trial court heard appellant's objection that the testimony would lead the jury to believe that appellee did not have funds to pay a judgment. The trial court did not find that prejudice had occurred; instead, the trial court determined that the door had not been opened for the introduction of insurance related evidence. The trial court was in a much better position to determine whether the jury was misled by this testi-

mony than we are. We cannot speculate upon the jury's general verdict and determine whether such testimony was prejudicial. Absent proof that the trial court denied a motion to include insurance evidence despite a finding that the jury was prejudiced, we cannot conclude that the trial court abused its discretion in ruling upon the exclusion of such evidence.

For the foregoing reasons, the trial court decision is affirmed.

Affirmed.

NEWBERN, GLAZE, and THORNTON, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. The collateral source rule should not be used to allow an unfair advantage to occur to a defendant attempting to avoid liability. The majority opinion relies on *Peters v. Pierce*, 308 Ark. 60, 823 S.W.2d 820 (1992), in which the Trial Court determined that the defendant's remark that he would be financially ruined by a judgment against him "[had] an impact on the jury." That case is cited to support the proposition that the Trial Court must make such a finding before error can be assigned to the exclusion of insurance coverage information. That is not so.

The *Peters* case and others the majority cites, stand, rather, for the proposition that relevance and good faith of the offering party are the key factors in allowing or excluding evidence of insurance coverage. When a party testifies about his or her financial condition in a false or misleading manner, the door opens to otherwise inadmissible insurance information. *Younts v. Baldor Elec. Co.*, 310 Ark. 86, 89, 832 S.W.2d 832, 834 (1992).

The injection of a reference to insurance coverage is not proper unless it is relevant and pertinent to some issue in the case. *Pickard v. Stewart*, 253 Ark. 1063, 491 S.W.2d 46 (1973). References to insurance are prejudicial and beyond cure by an admonition when they are not made in good faith. *Id.*

In *York v. Young*, 271 Ark. 266, 608 S.W.2d 20 (1980), and *Younts v. Baldor Elec. Co., supra*, considerations of the relevance of insurance coverage allowed its introduction to stand. Mr. York testified that he would have had additional work performed on his

vehicle had he been able to afford to do so. We upheld the Trial Court's decision to allow the defense to show that Mr. York could have repaired all the damage to his vehicle with the insurance proceeds, had he chosen to. We held that Mr. York's statement's were misleading to the jury and made the issue of insurance relevant.

In the *Younts* case, Mr. Younts testified on direct examination that he could not afford to reopen his business. Because that point was not at issue, the Trial Court allowed the defense to cross-examine Mr. Younts about the insurance proceeds he had received. The Court upheld the Trial Court's allowance of the evidence on the ground that Mr. Younts's testimony was misleading to the jury and he had made the issue of insurance relevant.

The *Peters* case relied on by the majority is very similar to the case at bar in that evidence of the defendant's work status was introduced. Mr. Peters said that he was retired and any money taken from him to satisfy a judgment could not be replaced. We reversed the Trial Court's exclusion of insurance evidence on the ground that Mr. Peters had made it appear he was alone in satisfying any judgment against him and thus could not afford to pay one. The testimony was misleading to the jury.

In this case, Mr. Carden testified that he was disabled and did not work. His attorney led him through a series of questions designed to bring out his preexisting physical injuries in order to contrast his condition after the accident with that of Ms. Esry. I can accept the explanation that the testimony about Mr. Carden's physical condition might have been elicited to show that, despite his fragile condition he suffered no injury in the collision and thus it must have been minor. I cannot, however, agree that the concluding question, "So you do not work I take it?", had any purpose other than to suggest to the jury that Mr. Carden was unemployed and thus that levying a judgment upon him would impose a hardship upon him greater than upon one who had a source of funds to pay it.

The question relating to Mr. Carden's unemployed status was irrelevant and misleading to the jury. Ms. Esry should have been allowed to submit evidence of Mr. Carden's insurance coverage.

I respectfully dissent.

GLAZE and THORNTON, JJ., join in this dissent.