2000 SD 73

**Warren Michael JURGENSEN, Plaintiff and Appellee,**

v.

**Lori Ann SMITH, Defendant and Appellant.**

No. 20996.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 2000.

Decided June 7, 2000.

Steven M. Johnson and Matthew T. Tobin of Johnson, Heidepriem, Miner, Marlow & Janklow, Todd C. Miller, Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

John E. Simko and Melanie L. Carpenter of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

TRIMBLE, Circuit Judge

[¶ 1.] This was a case of admitted liability. The jury was required to determine damages. Lori Ann Smith (Smith) appeals the award of damages to Warren Michael Jurgensen (Jurgensen) in the amount of $310,000. Smith alleges that based on the evidence presented, the trial court erred in not allowing her to introduce evidence that Jurgensen's financial condition was similar before and after the accident. Smith further alleges the trial court erred in not allowing her to assert a mitigation of damages defense. We affirm.

### FACTS

[¶ 2.] On January 23, 1996, Jurgensen was involved in a car accident with Smith. The accident occurred when Smith failed to stop at a red light. As a result of the accident, Jurgensen sustained serious physical injuries to his neck, back and shoulder and incurred substantial economic losses. Smith admitted liability in her answer and at trial. Thus, the only issue at trial was damages.

[¶ 3.] At the time of the accident, Jurgensen was employed by Electric Construction Company (Electric Construction) as a licensed journeyman electrician. His pay rate at the time of the accident was $16.25 per hour as a journeyman and $19.67 per hour as a foreman. Jurgensen's annual income prior to the accident was approximately $41,000 per year plus benefits.

[¶ 4.] On the date of the accident, Jurgensen was on his way to work at the First National Bank Building where he was supervising a small crew cleaning and fixing light fixtures. When he was about half a block from an intersection, the traffic light turned green. Jurgensen proceeded through the intersection where his vehicle was broadsided by Smith's vehicle. Jurgensen was taken to an emergency room where he was treated for a head injury. He was discharged with instructions to follow-up with his physician if his condition did not improve.

[¶ 5.] Jurgensen's condition did not improve so he sought chiropractic treatment on January 29. Dr. Mark Hagen (Hagen) examined Jurgensen and took x-rays. The x-rays revealed Jurgensen's back and neck had suffered severe trauma as a result of the accident and were out of alignment. The trauma had also caused the ligaments and nerves to break apart which resulted in a soft tissue injury.

[¶ 6.] The injuries to Jurgensen's neck and back prevented him from working from January 29 to April 4. During these months, Jurgensen underwent physical therapy designed to heal and strengthen the muscles in his back and neck. Although he returned to work on April 15, his pain persisted and he was forced to take another leave of absence from work. At this point, Jurgensen was referred to Dr. Myung Cho (Cho), a physiatrist specializing in the field of physical medicine and rehabilitation.

[¶ 7.] Cho found that Jurgensen's pain was consistent with injuries sustained in an automobile accident. Cho treated Jurgensen from August to December and prescribed trigger point injections and physical therapy designed to improve Jurgensen's muscle strength. Initially, the injections and therapy helped relieve the

pain, but it reoccurred as Jurgensen's work duties increased. In December, Cho released Jurgensen to return to work on a trial basis with a thirty pound lifting restriction. Within a week of returning to work, the pain returned to Jurgensen's back and neck and he was again forced to leave his job with Electric Construction. At that point, Cho ordered a Functional Capacities Evaluation (FCE).

[¶ 8.] An FCE is a comprehensive assessment of a patient's ability to deal with: weight; lifting or carrying; and the type of position they are able to tolerate, e.g. kneeling, standing, walking, or reaching above the head. Cho reviewed the FCE and concluded that Jurgensen was capable of performing medium level work. Cho then ordered a job site evaluation.

[¶ 9.] Stan Kulzer (Kulzer), an occupational therapist with Avera McKennan Hospital, went to Electric Construction and performed the job site evaluation. After visiting the job site, Kulzer concluded Jurgensen was not able to continue working as an electrician due to the injuries he received as a result of the car accident. In addition, Cho determined that a combination of lifting more than 25 pounds and reaching overhead prevented Jurgensen from returning to his job as a journeyman electrician.

[¶ 10.] On December 14, Jurgensen quit his job with Electric Construction. Jurgensen had sought a lighter duty position with Electric Construction, but no such positions were available. Jurgensen contacted his union and learned that Crescent Electric had an opening for an electrical estimator. He applied for that job, albeit for lower pay, but was not hired because he lacked the necessary experience and training with computers.

[¶ 11.] Faced with an inability to work as an electrician and growing financial trouble, Jurgensen sought vocational counseling. He filled out applications, took aptitude tests and went to classes designed to direct him toward a new career. During the course of this counseling, Jurgensen interviewed with Rick Ostrander (Ostrander), a vocational rehabilitation specialist. Ostrander concluded that by transferring Jurgensen's skills to a less physical occupation, such as pharmacy, he could return to the standard of living to which he was accustomed.

[¶ 12.] In 1997, Jurgensen enrolled in pre-pharmacy classes at South Dakota State University in Brookings, South Dakota. Testimony by Ostrander and Dr. Ralph Brown, a professor and economist at the University of South Dakota, indicated Jurgensen would lose more money by taking a lower paying substitute job than he would by returning to school for six years to become a licensed pharmacist. The evidence presented indicated Jurgensen would lose a total of $294,000 from the time of his accident to the time of his graduation with a pharmacy degree. In addition, it was undisputed that Jurgensen incurred medical bills in the amount of $15,141.09.

[¶ 13.] On March 10, 1999, after hearing all of the evidence and testimony, the jury returned a verdict in favor of Jurgensen in the amount of $310,000. The court entered judgment on the verdict on March 11.

[¶ 14.] Smith raises the following issues on appeal:

Whether the trial court abused its discretion in refusing to allow Smith to introduce evidence that Jurgensen received financial benefits from collateral sources.

Whether the trial court abused its discretion in refusing to grant Smith a jury instruction on mitigation of damages.

## ANALYSIS

[¶ 15.] **Did the trial court abuse its discretion in refusing to allow Smith to introduce evidence that Jurgensen received financial benefits from collateral sources?**

[¶ 16.] Smith argues that because references to Jurgensen's financial condition were made by both Jurgensen and his attorney, she should have been allowed to introduce evidence that Jurgensen received benefits from collateral sources. This argument is unpersuasive.

[¶ 17.] It is well settled under South Dakota law that " '[t]otal or partial compensation received by an injured party from a collateral source, wholly independent of the wrongdoer, does not operate to reduce the damages recoverable from the wrongdoer.' " *Moore v. Kluthe & Lane Ins. Agency, Inc.*, 89 S.D. 419, 434, 234 N.W.2d 260, 269 (1975)(quoting *Swift & Company v. Gutierez*, 76 Idaho 82, 277 P.2d 559, 561 (1954)). Furthermore, a plaintiff's collateral source of income "cannot be inquired into as part of a defendant's case, because of the danger that the jury may be inclined to ... reduce a damage award, when it learns that plaintiff's loss is entirely or partially covered." *Moses v. Union Pacific R.R.*, 64 F.3d 413, 416 (8th Cir.1995). This rule of law rests on the premise that it is more just that a windfall benefit an injured party as opposed to a tort feasor. *See Hamilton v. Slover*, 440 S.W.2d 947, 958 (Mo.1969)(overruled on other grounds by *Stover v. Patrick*, 459 S.W.2d 393 (Mo. 1970)).

[¶ 18.] The trial court ruled that Jurgensen's testimony did not open the door for Smith to introduce evidence of collateral sources. A trial court's evidentiary rulings are presumed correct and will not be reversed unless there is a clear abuse of discretion. *See Opp v. Nieuwsma*, 458 N.W.2d 352, 357 (S.D.1990); *Magbuhat v. Kovarik*, 382 N.W.2d 43, 46 (S.D. 1986). An abuse of discretion has been defined as a decision that is not justified by, and is clearly against reason and evidence. *Dakota Cheese, Inc. v. Taylor*, 525 N.W.2d 713, 715 (S.D.1995). This Court will not reverse a decision if it " 'believe[s] a judicial mind, in view of the law and the circumstances, could reasonably have

reached that conclusion.' " *See id.* (quoting *Rosen's, Inc. v. Juhnke*, 513 N.W.2d 575, 576 (S.D.1994)). Moreover, this Court has cautioned that it "must be careful not to substitute [its] reasoning for that of the trial court." *State v. Larson*, 512 N.W.2d 732, 736 (S.D.1994).

[¶ 19.] The mere fact that Jurgensen's financial status was introduced is not enough to warrant a finding of abuse of discretion by the trial court. As we noted in *Atkins v. Stratmeyer*, 1999 SD 131, ¶ 14, 600 N.W.2d 891, 897, "[w]e decline to extend the law to prohibit every single mention of financial status or insurance in cases such as this where it is vital to establish the amount of damages." Therefore, the trial court's ruling prohibiting Smith from introducing evidence that Jurgensen allegedly received funds from collateral sources was reasonable in light of the law and circumstances.

[¶ 20.] **Did the trial court err in refusing to give a jury instruction on mitigation of damages?**

[¶ 21.] In her second assignment of error, Smith contends that the trial court erred when it refused her proposed jury instruction on mitigation of damages. Of note is the fact that Smith failed to plead the affirmative defense of failure to mitigate damages. In fact, it was not raised until the settlement of instructions. Under South Dakota law, a defendant is required to plead any and all affirmative defenses in the answer to the plaintiff's complaint. *See* SDCL 15-6-8(c). Mitigation of damages is an affirmative defense. *See Kowing v. Williams*, 75 S.D. 454, 459, 67 N.W.2d 780, 783 (1954). This Court could find that the mitigation of damages argument was waived by Smith under our holding in *Farmers Cooperative El. Co. of Revillo v. Johnson*, 90 S.D. 36, 237 N.W.2d 671 (1976).

[¶ 22.] Smith's argument would fail even if this court were to allow her to amend her pleadings. It is well settled

that the court need only instruct the jury on issues supported by competent evidence in the record. *See Bauman v. Auch,* 539 N.W.2d 320, 323 (S.D.1995). Additionally, to obtain a reversal for failure to give a requested instruction, an appellant has the burden of proving that the jury might and probably would have returned a different verdict had the proposed instruction been given. *See Chambers v. Dakotah Charter, Inc.,* 488 N.W.2d 63, 64 (S.D.1992). Smith has not met that burden. The record is replete with evidence that Jurgensen took reasonable steps to improve his condition, including enrolling in a six-year pharmacy program at South Dakota State University. There is little, if any, evidence in the record to support a jury instruction on mitigation of damages. We find that the instructions given at trial correctly apprised the jury of the applicable law and the requisite quantum of proof.

[¶ 23.] Affirmed.

[¶ 24.] KONENKAMP, Justice, concurs.

[¶ 25.] MILLER, Chief Justice, concurs specially.

[¶ 26.] AMUNDSON, and GILBERT-SON, Justices, dissent.

[¶ 27.] TRIMBLE, Circuit Judge, for SABERS, Justice, disqualified.

MILLER, Chief Justice (concurring specially).

[¶ 28.] I concur and agree that the trial court's decision should be affirmed.

[¶ 29.] I write to reiterate that the facts of this case do not warrant creating an exception to our long-recognized collateral source rule. Nor should we rush to create an exception. That would be a dangerous precedent. By doing so we would relegate ourselves to constantly making a factual analysis in every case to determine whether the plaintiff's testimony was so egre-

gious as to open the door to the defendant's collateral evidence.

[¶ 30.] For many good reasons, to date we have not recognized an exception to the collateral source rule. In *Moore v. Kluthe & Lane Ins. Agency, Inc.,* 89 S.D. 419, 234 N.W.2d 260 (1975), we refused to create an exception where the defendant argued that plaintiffs, by testifying that they performed labor on their mobile home in order to make it habitable after flood damage, elicited sympathy from the jury and opened the door to collateral evidence. *Id.* at 435, 234 N.W.2d at 269.

[¶ 31.] Next in *Degen v. Bayman,* 90 S.D. 400, 241 N.W.2d 703 (1976), we applied the rule to a case where the victim received gratuitous medical services from a source wholly independent of the defendant. We affirmed the court's refusal to deduct the value of the gratuitous services from the overall verdict amount awarded. *Id.* at 410–11, 241 N.W.2d at 708–09.

[¶ 32.] Most recently in *Atkins v. Stratmeyer,* 1999 SD 131, 600 N.W.2d 891, we held that the plaintiff's brief reference to his financial condition and insurance, in response to a question from his attorney, did not create prejudicial error. By allowing the plaintiff to present evidence of his financial condition, we reaffirmed our adherence to the collateral source rule. In fact, we said such information is admissible where it is "vital to establish the amount of damages." *Id.,* ¶ 14, 600 N.W.2d at 897. In *Atkins* there was no indication that the defense attempted to rebut or impeach the plaintiff's evidence.

[¶ 33.] As the dissent notes, it may be true that an exception to the collateral source rule has been recognized in some jurisdictions where a party testifies about his or her financial condition "in a false or misleading manner." *Younts v. Baldor Elec. Co. Inc.,* 310 Ark. 86, 832 S.W.2d 832, 834 (1992).[1] However, we have not recog-

---

1. Unlike the present case, in *Younts,* when defense counsel alleged that the plaintiff's statement was made in a false or misleading manner, plaintiff's counsel did nothing to dispel it. Therefore, collateral evidence of insurance proceeds was admitted.

nized such an exception, and the facts of this case do not warrant it.

[¶ 34.] I must observe that even were we to adopt such an exception, there was no determination in the present case that Jurgensen's testimony was false or misleading. The transcript here reflects that, prior to cross-examination and during a hearing outside the presence of the jury, Smith's counsel attempted to show exactly that. Specifically, the attorney offered to rebut Jurgensen's statement that his family was barely surviving by asserting that the family's income for 1997 was approximately $32,000 – an amount arguably above poverty. Smith further offered to show that approximately $17,000 of this amount was received from disability payments.

[¶ 35.] Jurgensen's counsel countered by explaining that, in addition to the disability payments, part of the 1997 income figure was attributable to a pension his client was forced to cash in, thereby proving the plaintiff's difficult financial situation. Moreover, Smith's counsel admitted that the $32,000 income figure included both Mr. *and* Mrs. Jurgensen's income, not just Mr. Jurgensen's.

[¶ 36.] In denying Smith's offer of proof, the court explained that, as she understood it, the collateral source rule exists to exclude evidence of collateral payments, particularly those that might require repayment in the future, from improperly influencing the damage award. The court concluded that several sources of income Jurgensen received might need to be repaid in the future; therefore such evidence was inadmissible. I agree. Because Jurgensen's testimony was not shown to be false or misleading, no exception to the collateral source rule was warranted or worthy of consideration.

AMUNDSON, Justice (dissenting).

[¶ 37.] The majority correctly notes that under South Dakota law, " '[t]otal or partial compensation received by an injured party from a collateral source, wholly independent of the wrongdoer, does not operate to reduce the damages recoverable from the wrongdoer.' " *Moore v. Kluthe & Lane Ins. Agency, Inc.*, 89 S.D. 419, 434, 234 N.W.2d 260, 269 (1975) (quoting *Swift & Company v. Gutierez*, 76 Idaho 82, 277 P.2d 559, 561 (1954)) (quoting *Gersick v. Shilling*, 97 Cal.App.2d 641, 218 P.2d 583, 589 (1950)). In fact, the defendant cannot even inquire into the issue of plaintiff's receipt of income from collateral sources. *See Moses v. Union Pac. R.R.*, 64 F.3d 413, 416 (8th Cir.1995). An exception exists, however, when the plaintiff "opens the door" to such testimony. *See Younts v. Baldor Elec. Co. Inc.*, 310 Ark. 86, 832 S.W.2d 832, 834 (1992). It has been often stated that "[w]hen a party testifies about his or her financial condition in a false or misleading manner, ... he or she opens the door for the introduction of evidence which might otherwise be inadmissible under the collateral source rule." *See id.* (citing *Peters v. Pierce*, 308 Ark. 60, 823 S.W.2d 820 (1992); *York v. Young*, 271 Ark. 266, 608 S.W.2d 20 (1980)).

[¶ 38.] In *Younts*, Younts brought a products liability action against Baldor Electric Company because a defective motor in an exercise machine caused a fire that substantially damaged Younts tanning salon and exercise facility. 832 S.W.2d at 833. During direct examination, Younts' counsel asked him whether "he had been able to reopen his business after the fire." *Id.* at 834. Younts responded that he "[has]n't been able to afford it." *Id.* Defense counsel argued that Younts opened the door for him to show that Younts had received a $41,500 insurance settlement. The trial court found that Younts had "opened the door" and the Arkansas Supreme Court agreed. *Id.* The court noted,

> [i]t is important to recognize that Younts' testimony came when he was being questioned by his own counsel. The question asked was whether he had rebuilt the physical facilities of his business. The question was wholly irrelevant to any question in the case other

than possibly that of mitigation of damages which does not appear to have been at issue.... The important point is that Younts' response that he could not afford to rebuild could very well have been misleading to the jury.

*Id.*

[¶ 39.] In *Peters,* the driver of a truck brought an action against the driver of a vehicle which allegedly rear-ended his pickup truck. 823 S.W.2d at 820. The defendant, Pierce, was asked by his own counsel on direct examination "how long he had been retired." *Id.* Pierce responded that "[r]etired May 1st of 1988. And now, whatever I have, if it is taken away from me, I can't replace. I'm too old. I don't work anymore. I do occasionally part time, but not on a regular basis." *Id.* at 820–21. Peters had offered proof that he had incurred medical bills of $5,000 and loss of wages between $126,000 and $135,000, but a jury awarded him only $6,000. *Id.* at 820. Peters argued that he should be allowed to offer evidence that Pierce had received $50,000 in liability insurance because Peters had opened the door to such testimony. The Arkansas Supreme Court determined that Pierce did in fact "open the door." The court noted in its decision,

> [Pierce] injected his limited personal resources into issue, casting doubt before the jury that he could afford or financially survive a judgment against him. By doing so, he portrayed a false, or at least a misleading picture, that he alone would absorb any loss or judgment, and under these limited and special circumstances, [Peters] had the right to answer [Pierce's] portrayal by giving the jury the full and complete picture.

*Id.* at 822.

[¶ 40.] In *Washington v. Barnes Hosp.,* 897 S.W.2d 611, 619–21 (Mo.1995), the court was faced with, among other issues, whether the mitigating evidence of the availability of a free public schooling program that Washington qualified for should have been admitted. The court found that such evidence should not have been excluded by the trial court. *Id.* at 621. One of the court's justification for such a ruling was based upon the fact that Washington "opened the door to this issue by injecting testimony of Ms. Washington's financial condition into the case." *Id.* The court noted that " '[w]hether the plaintiff injects his financial condition through inadvertence or purposefully, it is the raising of plaintiff's financial condition with the jury that permits the opposing party to attack his claims of financial distress by showing that other financial assistance was available.' " *Id.* (quoting *Moore v. Missouri Pac. R.R. Co.,* 825 S.W.2d 839, 843 (Mo. 1992)).

[¶ 41.] In the present case, a review of the record reflects the following testimony from Jurgensen on direct examination:

Q. Tell us a little bit about your move to Brookings. Did you have to sell any of your property in order to survive and try to make this transition?

A. Yeah, we sold the house, my boat, all kinds of fishing equipment, basically everything we knew we wouldn't have room for.

. . . .

Q. And how are you and your wife surviving economically?

A. Barely I guess would be the best description.

. . . .

Q. Did you have to cash in or liquidate your pension plan that you had accumulated over the years as an electrician?

A. Yes, sir.

Q. And why did you have to do that?

A. We needed the money.

The record reflects that Jurgensen also testified that he had "debts that are to the limits" and that in regards to his earnings, he went from making $40,000 per year to

basically making nothing. After hearing Jurgensen's testimony, Smith made an offer of proof that established that Jurgensen received $32,453 in income in 1997; $17,623 originated from benefits from his local electric workers union. Jurgensen also received a substantially similar amount in 1998. Further, Jurgensen received a subsidy for his apartment rent and some of his college tuition and expenses were paid for through state programs. Smith argues that Jurgensen opened the door and he should have been allowed to present evidence that Jurgensen received income from collateral sources to prevent the jury from being mislead.

[¶ 42.] This is a case where Smith admitted liability and the only issue for the jury to decide was the amount of damages sustained by Jurgensen. Under the trial court's instruction number thirteen, the elements of damages for the jury to consider were set forth.[2] Reading this instruction clearly discloses that an element of damages is not proving whether or not one sold their house, whether or not one liquidated personal property, whether or not one liquidated a pension plan, whether or not someone tried to make ends meet, survive or is suffering financially. The only elements to be proven are injury, disability, pain and suffering, medical bills, lost income and future loss of income. When counsel argues that his client has been fighting for three years to make ends meet, but is not looking for sympathy, what else would they be looking for when "fighting for three years to make ends meet" is not an element of the jury instruction on damages.

[¶ 43.] The majority states that the reasoning behind the collateral source rule is to eliminate "the danger that the jury may be inclined to ... reduce [the plaintiff's] damage award, when it learns that the plaintiff's loss is entirely or partially covered." *See Moses,* 64 F.3d at 416. But this rule should not provide a shield for the introduction of evidence which has nothing to do with the determination of the damages amount. There is no question that Jurgensen is entitled to recover damages. On the other hand, there is also no dispute under our settled law that both parties are entitled to a fair trial. *See, e.g., Black v. Class,* 1997 SD 22, ¶ 24, 560 N.W.2d 544, 550 (noting that while a party

---

**2.** Jury Instruction number thirteen provided:

Your award of actual damages must be in an amount which will reasonably and fairly compensate Mike Jurgensen for all injuries or losses caused by Ms Smith, whether the loss or harm could have been anticipated or not, namely;

1) The nature, extent, and duration of Mike Jurgensen's injury.

2) The disfigurement and disability of Mike Jurgensen.

3) The pain and suffering mental anguish and loss of capacity of the enjoyment of life experienced in the past and reasonably certain to be experienced in the future as a result of the injury.

4) The reasonable expense of necessary medical care, treatment, and services received as a result of the January 23, 1996 accident;

5) The time Mike Jurgensen has lost for employment since the injury because he was unable to pursue his occupation or other income-producing activities. In determining this amount, you should consider evidence of Mike Jurgensen's earning capacity, past, earnings, and the manner in which he ordinarily occupied his time before the injury and find that Mike Jurgensen was reasonably certain to have earned in the time lost had he not been disabled.

6) The loss of future earning capacity of Mike Jurgensen because of his not being able to pursue his occupation or other income-producing activities. The factors to be considered in determining the measure of damages for loss of earning capacity included what Mike Jurgensen earned before the injury and what he is capable of earning after the injury, his prior ability and the extent to which his injuries affect his power to earn, his age, his life expectancy, his physical condition, his occupation, his skill and habits of industry.

Whether any of these elements of damages have been proved by the evidence is for you to determine. Your decision must be based on evidence and not upon speculation, guesswork, or conjecture.

is not entitled to a perfect trial, they are entitled to a fair trial).

[¶ 44.] We have previously held that "[t]rials are a search for the truth as determined by the jury based upon all the evidence." *Tunender v. Minnaert*, 1997 SD 62, ¶ 28, 563 N.W.2d 849, 855. If the truth that Jurgensen was trying to show the jury that he was living in poverty, then Smith should have been allowed to challenge that claim, notwithstanding the collateral source rule. In other words, based upon this record, Jurgensen has opened the door and Smith should be allowed to come in and challenge evidence which has a potential, if not strong possibility, of inciting the jury. This Court should not allow the collateral source rule to place blinders on its consideration of the case. It should also be noted that this is not a case involving a liability insurer's bad faith failure to pay, nor is it an action against said insurer to recover punitive damages as a result of the insurer's bad faith refusal to pay. Why else would this evidence have been added in this case other than to influence the jury's damages award. I would reverse and remand and if at retrial, the same poverty evidence is offered by the plaintiff, then Smith should be allowed to provide a complete and fair picture of plaintiff's actual financial condition during this time, rather than allow the collateral source rule to leave the jury in the dark.

[¶ 45.] GILBERTSON, Justice, joins this dissent.