#24824-a-JKK

**2009 SD 19**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

REYNALDO CRUZ,                     Plaintiff and Appellee,

    v.

TERRANCE E. GROTH,                 Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
TRIPP COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN F. TRANDAHL
Judge

\* \* \* \*

J. M. GROSSENBURG                  Attorney for plaintiff
Winner, South Dakota               and appellee.

TIMOTHY A. CLAUSEN of
Klass Law Firm, LLP                Attorneys for defendant
Sioux City, Iowa                   and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
AUGUST 26, 2008

OPINION FILED **03/18/09**

#24824

KONENKAMP, Justice

[¶1.] In this personal injury action, the defendant appeals a verdict for the plaintiff on the ground that the trial court erred when it prohibited the defense from using the plaintiff's medical insurance coverage to rebut the plaintiff's testimony that he did not seek further medical care because he could not afford it. Defendant argues for an exception to the collateral source rule when parties volunteer their financial circumstances before the jury. Although an exception may be appropriate in cases where collateral source evidence is offered on a substantial and relevant issue, such as malingering, defendant's offer of proof here was not sufficiently compelling to conclude that the trial court abused its discretion in refusing to admit the evidence.

**I.**

[¶2.] On September 26, 2005, Terrance Groth, while boating on Lake Francis Case, collided with a boat owned by Gerald Bachman. Bachman and his son-in-law, Reynaldo Cruz, were fishing while floating downstream. As a result of the impact, Cruz was thrown to his back. He sought medical treatment the following day, complaining of pain in his low back. An x-ray was taken, with unremarkable results, and Dr. Henderson recommended that Cruz follow up if he did not feel better. On November 2, 2005, Cruz sought care with Dr. Schramm, complaining of low back and neck pain. A CT scan revealed no visible injuries. Cruz was diagnosed with cervical and thoracic myalgia and arthralgia and was given a prescription medication for pain.

[¶3.]    In June 2006, Cruz sued Groth to recover for personal injuries.  Groth answered admitting "that he was negligent and that his negligence was the proximate cause of the boating accident at issue."  Groth denied that the accident caused Cruz's damages, however.  Before trial, Cruz moved in limine to prevent Groth from mentioning (1) any Med Pay available to Cruz from the insurance policy owned by Bachman, and (2) whether Cruz was personally insured or had insurance available after the accident.  Groth argued that this insurance information should be allowed to counter Cruz's anticipated testimony that the reason he did not continue to seek medical treatment despite his allegations of continued problems was because he could not afford it.  Cruz's attorney responded that his client "didn't go to the doctor because the defendant's insurance . . . wouldn't pay for it."

[¶4.]    Groth made an offer of proof that if he were allowed to question Cruz the evidence would show that Bachman had "medical pay insurance left on the boat" that "would have paid at least for another 900 some dollars' worth of treatment," and Cruz also "had health insurance through [his] employer . . . that would have paid for any additional treatment as well."  Cruz's attorney responded that his client did have Med Pay of $920, but "there were periods of time where [Cruz] did not, in the last 2 years, have health insurance available."  After balancing the probative value of this evidence against its prejudicial impact, the trial court granted Cruz's motion in limine, preventing the mentioning of available Med Pay or health insurance.  The court reasoned that "if insurance is interjected into this, that it will be unfairly prejudicial because it will take the jury away from

looking at what they're supposed to look at and solely look at the deal with insurance."

[¶5.] In opening statements, Cruz's attorney pled his client's poverty: "The reason [Cruz] didn't seek medical treatment was he was worried about his medical bills and — he's living hand to mouth with house payments and he's got four children, two of them I believe in college now and the other two will be there very soon." During trial, counsel for Cruz asked him why he did not continue to seek treatment if he was still in pain from the accident. Cruz responded, "I was just trying to see if I could get over it. . . . I was still trying to get to work because I still — I still didn't want to miss any work. So I was trying to get myself to work, and I was just trying to make the day, you know, without – without making my injuries worse so – and hoping that it would just, you know, go away." When asked why he did not seek treatment after November 2, Cruz said, "Well, because I could not afford to. You know, it's – it's costly, so that's — you know, it's not easy going to a doctor who's — without being able to afford to go. I just didn't go." On cross examination, Groth's attorney asked Cruz why he had not followed up with the two physicians, Dr. Henderson and Dr. Schramm, who had treated him shortly after the accident. Cruz responded, "Well, after noticing the – the cost, I mean, it – it kind of scared me off."

[¶6.] In closing argument, counsel for Cruz returned to the poverty theme:

> What the defense did try to do was say "because [Cruz] did not seek treatment consistently and frequently, therefore he must not be hurt." Now, [Cruz,] the day after the accident, did seek treatment. He got some medication. He lasted 5 weeks and had to seek treatment again, and then he lasted 6 months and he got

> another prescription over the telephone, all the time being
> concerned about the cost and his ability to pay for medical bills.
>
> * * *
>
> And besides, he's a tough guy, and he was willing to suck it up rather
> than risk not being able to pay for it.

In Groth's closing argument, defense counsel suggested malingering: despite all Cruz's complaints of continuing pain, he failed to return to his medical providers for treatment.

> We don't have any follow-up, not then, not in November or
> anytime in 2005, and not ever. Not to this day has he followed
> up with any treating medical provider, not one. . . .
>
> * * *
>
> And what he testified to is the reason he didn't follow up for
> medical treatment was that he couldn't afford it. He couldn't
> afford it. Mr. Cruz was fully employed full-time at the hospital
> working around doctors and nurses every single day 5 days a
> week 40 hours a week. His wife was a fully employed RN full-
> time, was a medical provider working around doctors every day
> of the week.

In rebuttal, Cruz's attorney responded:

> The reason he doesn't go to the doctor all the time isn't because
> he can't afford it. He's a tough guy. He's trying to live with his
> condition. He's not a crybaby.

[¶7.]    The jury awarded Cruz $38,000. Groth appeals, asserting that the court erred when it declined to recognize an exception to the collateral source rule to allow proof that Cruz had personal insurance and Med Pay available despite the fact that he claimed he could not seek medical care because he could not afford it.

## II.

[¶8.]    We begin our analysis with the long-standing axiom that a "court's evidentiary rulings are presumed correct and will not be reversed unless there is a

clear abuse of discretion." Jurgensen v. Smith, 2000 SD 73, ¶18, 611 NW2d 439, 442 (citations omitted). Certainly the trial court was mindful of our precedent. In *Jurgensen*, we held that the mere reference to a plaintiff's financial status during trial was not enough to warrant a finding of abuse of discretion when the trial court refused to admit collateral source evidence. *Id.* ¶19. According to Groth, however, this case presents more than the mention of Cruz's financial condition: Cruz was allowed to leave the jury "with an unrebutted, misleading and frankly false assertion as a fact."

[¶9.]        The collateral source rule functions both as a rule of evidence and as a rule of damages. Papke v. Harbert, 2007 SD 87, ¶¶68, 69, 738 NW2d 510, 532. As a rule of evidence, it prohibits a defendant from offering proof of a plaintiff's collateral source benefits, received independent of the tortfeasor, that compensate the plaintiff, in whole or in part, for his or her injury. *Id.* ¶68 (citations omitted). As a rule of damages, it prohibits a defendant from reducing personal liability for damages because of payments received by the plaintiff from independent sources. *Id.* ¶69 (citations omitted). To date, we have unwaveringly applied this rule, without recognizing any exceptions.

[¶10.]        Rationales for upholding the rule are compelling: "a plaintiff's collateral source of income 'cannot be inquired into as part of a defendant's case, because of the danger that the jury may be inclined to . . . reduce a damage award, when it learns that plaintiff's loss is entirely or partially covered.'" *Jurgensen*, 2000 SD 73, ¶17, 611 NW2d at 442 (quoting Moses v. Union Pacific R.R., 64 F3d 413, 416 (8thCir 1995)). As the United States Supreme Court recognized, "the likelihood of

misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of [collateral source benefits]." Eichel v. New York Cent. R.R. Co., 375 US 253, 255, 84 SCt 316, 317, 11 LEd2d 307 (1963) (Railroad Retirement Act disability pension) (citation omitted). Moreover, tortfeasors should not be able to profit from their wrongdoing by obtaining credit on damages against their victims' independent benefits.

[¶11.]	Still, the rule should not constitute an absolute bar to the admission of collateral source evidence. Most jurisdictions allow an exception to the general rule of exclusion where the evidence is sought to prove malingering or some other ground unrelated to reducing the defendant's damages. In those instances, the decision to allow the evidence is left to the sound discretion of the trial court. "Most courts . . . have refused to adopt . . . an inflexible exclusionary rule and have instead chosen to regard the admissibility of collateral source benefits evidence for the purpose of establishing malingering, as being a matter at least to some extent within the discretion of the trial judge." William H. Danne, Jr., *Admissibility of Evidence that Injured Plaintiff Received Benefits from a Collateral Source, on Issue of Malingering or Motivation to Extend Period of Disability*, 47 ALR3d 234, 239-240 (1973) (updated 2008). Several appellate courts have sanctioned, in the trial court's discretion, admission of collateral source evidence in order to show malingering, if there is corroborative evidence of malingering. Young v. Envtl. Air Prods., Inc., 665 P2d 88, 93-94 (ArizCtApp 1982); Hrnjak v. Graymar, Inc., 484 P2d 599, 605 (Cal

1971); Gurliacci v. Mayer, 590 A2d 914, 929 (Conn 1991); Corsetti v. Stone Co., 483 NE2d 793, 803 (Mass 1985).

[¶12.] We remain skeptical of using collateral source evidence for impeachment, even here where plaintiff's counsel, armed with the court's in limine ruling, could argue free of contradiction that his client could not afford treatment despite his complaints of continuing medical problems. Facile admittance of collateral source material threatens to enfeeble the collateral source rule and render it ineffectual. Allowing evidence that insurance was available to a plaintiff would also create a trial within a trial. In this case, divulging Cruz's medical coverage raises questions such as: How does Med Pay work? Why did Cruz only have insurance for six months? How much coverage did Cruz have on his personal insurance? Did he have a deductible? If so, had he met it? What was Cruz's co-pay? Nonetheless, in conformity with the majority rule, we think that trial courts may allow an exception to the general rule of exclusion where the evidence is sought to prove malingering, when there is independent proof of such malingering.

[¶13.] If it is determined that the collateral source evidence is being offered for a relevant purpose (malingering), rather than for a forbidden purpose (mitigation of damages), the trial court must still determine whether, even though relevant, the evidence should be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" SDCL 19-12-3 (Rule 403). Here, the trial court performed the balancing required under Rule 403 and concluded that the probative value was substantially outweighed by the danger of unfair prejudice. Our task, accordingly, is simply to

decide whether the trial court abused its discretion in refusing Groth's offer of proof. That offer was that Cruz had a little over $900 in Med Pay coverage on the boat insurance and medical coverage during the six months he worked at the hospital after the accident. We think it significant that the two doctor visits that Cruz attended, one on the day after the accident, the other on November 2, 2005, with their attendant diagnostic tests, including a CT Scan, cost a total of $4,080. It may not have been wholly unreasonable for Cruz to fear that an additional $920 in Med Pay and personal insurance available for six months following the accident would not have been sufficient for additional medical care. And certainly the trial court was rightly concerned that the evidence of insurance in this case had a potential for improperly influencing the jury in its determination of what damages were legally caused by Groth's negligence. Moreover, there was no corroborating evidence of malingering. Considering the entirety of the record, we conclude that the trial court acted within its discretion in declining to allow collateral source evidence that threatened to turn the jury's attention from the issue of damages to the more perilous question of whether Cruz had adequate insurance to pay for his unsought medical care.

[¶14.]	Affirmed.

[¶15.]	MEIERHENRY, Justice and SABERS, Retired Justice, concur.

[¶16.]	GILBERTSON, Chief Justice and ZINTER, Justice, dissent.

ZINTER, Justice (dissenting).

[¶17.]        If there were ever a case where *rebuttal* evidence regarding the

availability of medical insurance *coverage* (not receipt of insurance benefits) was

necessary for a fair trial on a material issue raised by an opposing party, this was

the case.  The severity of Cruz's injuries and his complaints of ongoing pain were

the central issue of this case; and, Cruz's trial strategy was to assert that despite

his claimed injury and pain, he did not seek medical treatment because he could not

afford it.  As the Court concedes, Cruz utilized this trial strategy from opening

statement, to his testimony elicited by his own counsel, and through final

argument.  *See supra* ¶¶5-6.  To contradict this evidence, Groth's offer of proof

reflected that there was approximately $900 in medical payment benefits available

and Cruz also had health insurance through his wife's employment that would have

paid for treatment.  Cruz's attorney did not dispute the offer of proof.  On the

contrary, he admitted $920 of medical pay would have been available.[1]  *See supra*

¶4.  The problem is that the circuit court precluded this rebuttal evidence by

granting a motion in limine before trial.  Consequently, the circuit court ruled

before Cruz's trial strategy had opened the door to the rebuttal evidence; and, as

this Court concedes, the result was that "plaintiff's counsel, armed with the circuit

---

1.        With respect to Cruz's health insurance through his wife's employment, Cruz
          argued that this evidence could be confusing because of "subrogation issues."
          Groth responded that he only wished to disclose that health insurance
          *coverage would have been available* for the claimed ongoing pain.  Groth
          clearly stated that he was not proposing to offer evidence of insurance
          *payments*, and therefore, there would be no subrogation argument that could
          have reduced Cruz's damage claim for medical expenses that had been
          incurred.

court's in limine ruling, could argue free of contradiction that his client could not afford treatment despite his complaints of continuing medical problems." *Supra* ¶12. Under these unique circumstances, I respectfully dissent.

[¶18.]     In our last case involving the related issue of collateral source payments, the opinions of the Court reflect that exclusion of collateral source evidence may constitute an abuse of discretion when a plaintiff "open[s] the door. . . to introduce evidence of collateral sources." Jurgensen v. Smith, 2000 SD 73, ¶18, 611 NW2d 439, 442. *Jurgensen* was a split decision. Although the two lead writers affirmed the exclusion of collateral source evidence, they did so only because that plaintiff had merely offered general evidence of his "financial status [,which] was . . . not enough to warrant a finding of abuse of discretion by the trial court." *Id.* ¶19, 611 NW2d at 442. In a special concurrence, then Chief Justice Miller explained: "Because [the plaintiff's] testimony was not shown to be false or misleading, no exception to the collateral source rule was warranted or worthy of consideration." *Id.* ¶36, 611 NW2d at 444 (Miller, C.J., concurring specially). The two dissenting Justices would have allowed the evidence because they believed the plaintiff had presented misleading financial evidence. *Id.* ¶¶37, 44, 611 NW2d at 444, 447 (Amundson, J., dissenting). Thus, this Court recognized the exception to the collateral source rule in *Jurgensen*. The disagreement was limited to whether the door had been sufficiently opened by the plaintiff's mere reference to his financial condition.

[¶19.]     In this case, there is no dispute that Cruz went well beyond a mere reference to his financial condition. After obtaining the in limine ruling, Cruz

affirmatively argued and offered proof that although he claimed his injuries were severe and his pain was ongoing, his failure to seek the associated, necessary medical treatment was justified because he could not afford it. This made Cruz's justification claim a material issue that the jury had to resolve. Indeed, the circuit court permitted written juror questions, and following Cruz's testimony, one juror asked the court to inquire of Cruz whether his wife's job "provided medical benefits? If so, why didn't he get help if he had pain?" Pursuant to its in limine ruling, the court did not allow the question. And ultimately, because of the court's rulings, Cruz was permitted to affirmatively interject inability to pay as a justification for conduct that was inconsistent with his claimed injury and pain without ever being cross-examined on the asserted justification.

[¶20.] Therefore, unlike *Jurgensen*, Cruz clearly opened the door by making his financial ability to obtain treatment a central issue in his case. Furthermore, as previously noted, Cruz's counsel admitted Groth's offer of proof regarding the availability of medical payment benefits. Therefore, at least with respect to medical payments coverage, the proffered rebuttal evidence directly refuted a material issue that Cruz himself had raised, and there was no danger of a mini-trial on the side issue of coverage.[2] Nevertheless, the Court does not find Groth's offer of proof

---

2. For this reason, this Court's litany of hypothetical insurance questions, *see supra* ¶12, does not justify exclusion of the *medical payment* evidence. None of this Court's hypothetical questions pertaining to medical payments coverage were raised at trial.

   With respect to health insurance, Cruz only indicated that there were periods of time coverage was not in effect. It would not have been a confusing or complicated matter for Cruz, if he really claimed no health insurance

(continued . . .)

"sufficiently compelling" to allow Groth to rebut Cruz's claimed financial inability to obtain medical treatment. *See supra* ¶1. Under these circumstances, what more "sufficiently compelling" offer of proof would this Court require? Considering Cruz's trial strategy of using argument and testimony alleging inability to pay for necessary treatment as a justification for conduct that was inconsistent with his claimed injury and pain, and considering Groth's uncontested offer of proof, the rebuttal evidence was necessary for a fair trial. As the Minnesota Supreme Court explained in adopting the exception to the collateral source rule:

> [W]hen a plaintiff, through either the use of misleading statements or outright false statements, falsely conveys to the jury that he or she is destitute or in dire financial straits, the admission of evidence of collateral source payments received by the plaintiff is permitted. We note that when a party "offers evidence that certain conditions exist, he cannot complain that the court permits his evidence to be rebutted."

Kroning v. State Farm Auto. Ins. Co., 567 NW2d 42, 46 (Minn 1997) (citations omitted).

[¶21.] The Third Circuit Court of Appeals considered a remarkably similar case in which a plaintiff affirmatively claimed financial inability to obtain medical treatment for his claimed injuries. In *Gladden v. P. Henderson & Co.,* 385 F2d 480, 482 (3rdCir 1967), the plaintiff volunteered testimony on direct examination that he did not return to his doctor because "my bills got behind and when I went back to work, that was one of the main reasons I went back to work, was to try to catch my

_____

(. . . continued)
    coverage during certain periods, to simply tell the jury when he had no
    coverage through his wife's employment.

bills up and support my family." The Third Circuit held that the defendant was not required to leave this testimony unchallenged: "The barriers which have been created against the admission of otherwise relevant evidence because of its prejudicial effect do not extend to the affirmative volunteering by a plaintiff of testimony which breaks into this restrictive area." *Id*. at 483-84. The court noted: "To have forbidden such cross-examination would have conferred on plaintiff the unparalleled right to give testimony on direct examination with immunity from inquiry on cross-examination." *Id*. at 483. As the Supreme Court of Missouri noted in a similar case, when a plaintiff injects his financial condition in connection with failure to obtain treatment, the opposing party is entitled to show that other financial assistance was available. Moore v. Missouri Pac. R.R. Co, 825 SW2d 839, 843 (Mo 1992). "[I]t is the raising of plaintiff's financial condition with the jury that permits the opposing party to attack his claims of financial distress by showing that other financial assistance was available." *Id*.

[¶22.]     By his trial strategy, Cruz could not have made a clearer case for admission of Groth's rebuttal evidence. This was not a case where malingering was raised as a defense pretext to admit evidence of insurance. This was a case in which *Cruz* affirmatively asserted his financial inability to pay as an argument to justify his failure to seek treatment and bolster his claims of injury and pain. Therefore, notwithstanding this Court's facial recognition of an "exception to the general rule of exclusion where the evidence is sought to prove malingering," *supra* ¶11, the result of today's decision is that the recognized exception may never be utilized in this jurisdiction. After all, as previously noted, there was no dispute or

asserted potential confusion over the availability of medical payment benefits, and this Court concedes that this case involves a situation in which "plaintiff's counsel, armed with the circuit court's in limine ruling, could argue free of contradiction that his client could not afford treatment despite his complaints of continuing medical problems." *Supra* ¶12. If rebuttal evidence of available insurance coverage is not admissible in such a case involving a plaintiff's affirmative attempt to bolster his own claim, then no case can satisfy this Court's standard.

[¶23.] I acknowledge our abuse of discretion standard of review, but as previously noted: "The barriers which have been created against the admission of otherwise relevant evidence because of its prejudicial effect do not extend to the affirmative volunteering by a plaintiff of testimony which breaks into this restrictive area." *Gladden,* 385 F2d at 483-84. Furthermore, although the collateral source rule is well-established and we remain skeptical of exceptions, the circuit court's refusal to reconsider its ruling in limine impermissibly allowed simultaneous use of the collateral source rule as both a sword and a shield:

> [T]he collateral benefit rule cannot be made a springboard from which a plaintiff may go forward with affirmative evidence that he [acted in any way inconsistent with his claim that] he was still ailing, because of financial need and then seek immunity from cross-examination regarding it. The boundary of silence was crossed when plaintiff affirmatively presented on direct examination the reason why he had [acted inconsistently] and had not again visited his physician.

*Id.* at 484. The circuit court's rulings reflect that although it considered the reasons for the general rule of exclusion, it did not consider the rules for application of the exception.

#24824

[¶24.]     Although trial courts do not abuse their discretion when merely allowing or disallowing questionable evidence, an abuse of discretion occurs in misapplication of the rules. Kaiser v. Univ. Physicians Clinic, 2006 SD 95, ¶29, 724 NW2d 186, 194. I would hold that the circuit court misapplied the collateral source rule when, after granting a routine motion in limine, the court failed to consider and apply the recognized exception in such a clear case. I would reverse and remand for a new trial.

[¶25.]     GILBERTSON, Chief Justice, joins this dissent.