KONENKAMP, Justice.
[¶ 1.] In this personal injury action, the defendant appeals a verdict for the plaintiff on the ground that the trial court erred when it prohibited the defense from using the plaintiffs medical insurance coverage to rebut the plaintiffs testimony that he did not seek further medical care because he could not afford it. Defendant argues for an exception to the collateral source rule when parties volunteer their financial circumstances before the jury. Although an exception may be appropriate in cases where collateral source evidence is offered on a substantial and relevant issue, such as malingering, defendant’s offer of proof here was not sufficiently compelling to conclude that the trial court abused its discretion in refusing to admit the evidence.
I.
[¶ 2.] On September 26, 2005, Terrance Groth, while boating on Lake Francis Case, collided with a boat owned by Gerald Bachman. Bachman and his son-in-law, Reynaldo Cruz, were fishing while floating downstream. As a result of the impact, Cruz was thrown to his back. He sought medical treatment the following day, complaining of pain in his low back. An x-ray was taken, with unremarkable results, and Dr. Henderson recommended that Cruz follow up if he did not feel better. On November 2, 2005, Cruz sought care with Dr. Schramm, complaining of low back and neck pain. A CT scan revealed no visible injuries. Cruz was diagnosed with cervical and thoracic myalgia and arthralgia and was given a prescription medication for pain.
[¶ 3.] In June 2006, Cruz sued Groth to recover for personal injuries. Groth answered admitting “that he was negligent and that his negligence was the proximate cause of the boating accident at issue.” Groth denied that the accident caused Cruz’s damages, however. Before trial, Cruz moved in limine to prevent Groth from mentioning (1) any Med Pay available to Cruz from the insurance policy owned by Bachman, and (2) whether Cruz was personally insured or had insurance available after the accident. Groth argued that this insurance information should be allowed to counter Cruz’s anticipated testimony that the reason he did not continue to seek medical treatment despite his allegations of continued problems was because he could not afford it. Cruz’s attorney responded that his client “didn’t go to the doctor because the defendant’s insurance ... wouldn’t pay for it.”
[¶ 4.] Groth made an offer of proof that if he were allowed to question Cruz the evidence would show that Bachman had “medical pay insurance left on the boat” *812 that “would have paid at least for another 900 some dollars’ worth of treatment,” and Cruz also “had health insurance through [his] employer ... that would have paid for any additional treatment as well.” Cruz’s attorney responded that his client did have Med Pay of $920, but “there were periods of time where [Cruz] did not, in the last 2 years, have health insurance available.” After balancing the probative value of this evidence against its prejudicial impact, the trial court granted Cruz’s motion in limine, preventing the mentioning of available Med Pay or health insurance. The court reasoned that “if insurance is interjected into this, that it will be unfairly prejudicial because it will take the jury away from looking at what they’re supposed to look at and solely look at the deal with insurance.”
[¶ 5.] In opening statements, Cruz’s attorney pled his client’s poverty: “The reason [Cruz] didn’t seek medical treatment was he was worried about his medical bills and — he’s living hand to mouth with house payments and he’s got four children, two of them I believe in college now and the other two will be there very soon.” During trial, counsel for Cruz asked him why he did not continue to seek treatment if he was still in pain from the accident. Cruz responded, “I was just trying to see if I could get over it.... I was still trying to get to work because I still — I still didn’t want to miss any work. So I was trying to get myself to work, and I was just trying to make the day, you know, without— without making my injuries worse so — and hoping that it would just, you know, go away.” When asked why he did not seek treatment after November 2, Cruz said, “Well, because I could not afford to. You know, it’s — it’s costly, so that’s — you know, it’s not easy going to a doctor who’s— without being able to afford to go. I just didn’t go.” On cross examination, Groth’s attorney asked Cruz why he had not followed up with the two physicians, Dr. Henderson and Dr. Schramm, who had treated him shortly after the accident. Cruz responded, “Well, after noticing the — the cost, I mean, it — it kind of scared me off.”
[¶ 6.] In closing argument, counsel for Cruz returned to the poverty theme:
What the defense did try to do was say “because [Cruz] did not seek treatment consistently and frequently, therefore he must not be hurt.” Now, [Cruz,] the day after the accident, did seek treatment. He got some medication. He lasted 5 weeks and had to seek treatment again, and then he lasted 6 months and he got another prescription over the telephone, all the time being concerned about the cost and his ability to pay for medical bills.
* ⅜ *
And besides, he’s a tough guy, and he was willing to suck it up rather than risk not being able to pay for it.
In Groth’s closing argument, defense counsel suggested malingering: despite all Cruz’s complaints of continuing pain, he failed to return to his medical providers for treatment.
We don’t have any follow-up, not then, not in November or anytime in 2005, and not ever. Not to this day has he followed up with any treating medical provider, not one....
* * *
And what he testified to is the reason he didn’t follow up for medical treatment was that he couldn’t afford it. He couldn’t afford it. Mr. Cruz was fully employed full-time at the hospital working around doctors and nurses every single day 5 days a week 40 hours a week. His wife was a fully employed *813 RN full-time, was a medical provider working around doctors every day of the week.
In rebuttal, Cruz’s attorney responded:
The reason he doesn’t go to the doctor all the time isn’t because he can’t afford it. He’s a tough guy. He’s trying to live with his condition. He’s not a crybaby.
[¶ 7.] The jury awarded Cruz $38,000. Groth appeals, asserting that the court erred when it declined to recognize an exception to the collateral source rule to allow proof that Cruz had personal insurance and Med Pay available despite the fact that he claimed he could not seek medical care because he could not afford it.
II.
[¶ 8.] We begin our analysis with the long-standing axiom that a “court’s evidentiary rulings are presumed correct and will not be reversed unless there is a clear abuse of discretion.” Jurgensen v. Smith, 2000 SD 73, ¶ 18, 611 N.W.2d 439, 442 (citations omitted). Certainly the trial court was mindful of our precedent. In Jurgensen, we held that the mere reference to a plaintiffs financial status during trial was not enough to warrant a finding of abuse of discretion when the trial court refused to admit collateral source evidence. Id. ¶ 19. According to Groth, however, this case presents more than the mention of Cruz’s financial condition: Cruz was allowed to leave the jury “with an unrebutted, misleading and frankly false assertion as a fact.”
[¶ 9.] The collateral source rule functions both as a rule of evidence and as a rule of damages. Papke v. Harbert, 2007 SD 87, ¶¶ 68, 69, 738 N.W.2d 510, 532. As a rule of evidence, it prohibits a defendant from offering proof of a plaintiffs collateral source benefits, received independent of the tortfeasor, that compensate the plaintiff, in whole or in part, for his or her injury. Id. ¶ 68 (citations omitted). As a rule of damages, it prohibits a defendant from reducing personal liability for damages because of payments received by the plaintiff from independent sources. Id. ¶ 69 (citations omitted). To date, we have unwaveringly applied this rule, without recognizing any exceptions.
[¶ 10.] Rationales for upholding the rule are compelling: “a plaintiffs collateral source of income ‘cannot be inquired into as part of a defendant’s case, because of the danger that the jury may be inclined to ... reduce a damage award, when it learns that plaintiffs loss is entirely or partially covered.’ ” Jurgensen, 2000 SD 73, ¶ 17, 611 N.W.2d at 442 (quoting Moses v. Union Pacific R.R., 64 F.3d 413, 416 (8th Cir.1995)). As the United States Supreme Court recognized, “the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of [collateral source benefits].” Eichel v. New York Cent. R.R. Co., 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963) (Railroad Retirement Act disability pension) (citation omitted). Moreover, tortfeasors should not be able to profit from their wrongdoing by obtaining credit on damages against their victims’ independent benefits.
[¶ 11.] Still, the rule should not constitute an absolute bar to the admission of collateral source evidence. Most jurisdictions allow an exception to the general rule of exclusion where the evidence is sought to prove malingering or some other ground unrelated to reducing the defendant’s damages. In those instances, the decision to allow the evidence is left to the sound *814 discretion of the trial court. “Most courts ... have refused to adopt ... an inflexible exclusionary rule and have instead chosen to regard the admissibility of collateral source benefits evidence for the purpose of establishing malingering, as being a matter at least to some extent within the discretion of the trial judge.” William H. Danne, Jr., Admissibility of Evidence that Injured Plaintiff Received Benefits from a Collateral Source, on Issue of Malingering or Motivation to Extend Period of Disability, 47 A.L.R.3d 234, 239-240 (1973) (updated 2008). Several appellate courts have sanctioned, in the trial court’s discretion, admission of collateral source evidence in order to show malingering, if there is corroborative evidence of malingering. Young v. Envtl. Air Prods., Inc., 136 Ariz. 206, 665 P.2d 88, 93-94 (Ariz.Ct.App.1982); Hrnjak v. Graymar, Inc., 4 Cal.3d 725, 94 Cal.Rptr. 623, 484 P.2d 599, 605 (1971); Gurliacci v. Mayer, 218 Conn. 531, 590 A.2d 914, 929 (1991); Corsetti v. Stone Co., 396 Mass. 1, 483 N.E.2d 793, 803 (1985).
[¶ 12.] We remain skeptical of using collateral source evidence for impeachment, even here where plaintiffs counsel, armed with the court’s in limine ruling, could argue free of contradiction that his client could not afford treatment despite his complaints of continuing medical problems. Facile admittance of collateral source material threatens to enfeeble the collateral source rule and render it ineffectual. Allowing evidence that insurance was available to a plaintiff would also create a trial within a trial. In this ease, divulging Cruz’s medical coverage raises questions such as: How does Med Pay work? Why did Cruz only have insurance for six months? How much coverage did Cruz have on his personal insurance? Did he have a deductible? If so, had he met it? What was Cruz’s co-pay? Nonetheless, in conformity with the majority rule, we think that trial courts may allow an exception to the general rule of exclusion where the evidence is sought to prove malingering, when there is independent proof of such malingering.
[¶ 13.] If it is determined that the collateral source evidence is being offered for a relevant purpose (malingering), rather than for a forbidden purpose (mitigation of damages), the trial court must still determine whether, even though relevant, the evidence should be excluded when “its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]” SDCL 19-12-3 (Rule 403). Here, the trial court performed the balancing required under Rule 403 and concluded that the probative value was substantially outweighed by the danger of unfair prejudice. Our task, accordingly, is simply to decide whether the trial court abused its discretion in refusing Groth’s offer of proof. That offer was that Cruz had a little over $900 in Med Pay coverage on the boat insurance and medical coverage during the six months he worked at the hospital after the accident. We think it significant that the two doctor visits that Cruz attended, one on the day after the accident, the other on November 2, 2005, with their attendant diagnostic tests, including a CT Scan, cost a total of $4,080. It may not have been wholly unreasonable for Cruz to fear that an additional $920 in Med Pay and personal insurance available for six months following the accident would not have been sufficient for additional medical care. And certainly the trial court was rightly concerned that the evidence of insurance in this case had a potential for improperly influencing the jury in its determination of what damages were legally caused by Groth’s negligence. Moreover, there was no corroborating evidence of malingering. Considering the en *815 tirety of the record, we conclude that the trial court acted within its discretion in declining to allow collateral source evidence that threatened to turn the jury’s attention from the issue of damages to the more perilous question of whether Cruz had adequate insurance to pay for his unsought medical care.
[¶ 14.] Affirmed.
[¶ 15.] MEIERHENRY, Justice and SABERS, Retired Justice, concur.
[¶ 16.] GILBERTSON, Chief Justice and ZINTER, Justice, dissent.